37989.  HAGGARD *v.* SHAW *et al.*

Decided November 18, 1959—Rehearing denied
December 3, 1959.

814

*Vincent P. McCauley, Jack M. Thornton,* for plaintiff in error.
*Paul Blanchard, Arthur F. Copland,* contra.

TOWNSEND, Judge. ■ ■ Count 1 of the petition, based on libel, alleges that the statements in the letter as to indebtedness, arrears, requests for payment and the statement that every possible means to collect the account had been used are all false and defamatory statements; that these statements were delivered and published to the Director of Civilian Personnel and numerous other employees of the United States Government having authority over the plaintiff; that the intendment of the statements was that the plaintiff, although capable of paying her debts, lacked the honesty and integrity to do so and that she refused to pay the debt because of her dishonesty, and the statements were so understood by those who read them; that the defamatory matter was calculated to and did injure the plaintiff's reputation; that they were wilfully and maliciously made; that she was injured in her trade and profession in that a good credit rating is essential for employees of the United States Government to retain their employment; that the plaintiff had informed the defendants that she had never owed any debt to Dr. C. D. Johnson or the defendants and had no knowledge thereof and the act was without probable cause on the part of the defendants; that the plaintiff had to spend three hours straightening out the matter with her superiors; that the letter has been placed in her personnel file and will be a constant detriment to promotion or advancement with the United States Government.

In *Estes* v. *Sterchi Bros. Stores,* 50 *Ga. App.* 619 (179 S. E. 222) it was held that words which are plain and unambiguous and do not impute a crime can not by innuendo have their

meaning enlarged and extended so as to become actionable per se, citing *Morris* v. *Evans*, 22 *Ga. App.* 11 (95 S. E. 385). The words in the *Estes* case were that a named person "persists in retaining money that is due" despite appeals for payment. The letter to the employer there closely resembles the letter to the employer here, which states that the writer has failed to "collect this account" and no response has been received to "written requests." The wording clearly does not impute a crime, and cannot by innuendo be enlarged so as to do so. A charge that a person owes a debt which is past due and which he refuses to pay is not libelous per se. *Mell* v. *Edge*, 68 *Ga. App.* 314 (2) (22 S. E. 2d 738). These cases state well settled law, and the request to overrule them is denied. Count 1 of the petition accordingly does not charge a libel per se in failing to pay the account.

■ Where the falsely spoken or written words do not contain "a charge made in reference to one's trade, office or profession" they are not actionable without proof of special damages on the theory that they tend to injure one in his trade or profession. *Van Epps* v. *Jones*, 50 *Ga.* 238; *Mell* v. *Edge*, 68 *Ga. App.* 314, supra. Only general damages are sought here. The pleader shows nothing to have resulted from the letter which has specially damaged her in a monetary sense. She alleges that employees of the United States Government who refuse to pay their debts are discharged and that a good credit rating is essential in order to retain employment, but fails to allege that her credit rating was in fact affected or that she was discharged. In like manner she alleges the letter in her file will be a detriment to advancement but fails to show what damages, if any, would result therefrom. "In an action for libel, where the alleged defamatory words are as a matter of law not actionable per se, and where the petition does not set out any proper or legitimate item of special damage, and where it fails to allege by way of innuendo that the words complained of 'convey a covert meaning, wholly different from the ordinary and natural interpretation usually put upon them' and that the author of the libel intended them to be understood in their covert sense, and that they were in fact so understood by those who read them, the petition does not

set out a cause of action and should be dismissed on general demurrer." *Anderson* v. *Kennedy,* 47 *Ga. App.* 380 (170 S. E. 555). The trial judge did not err in sustaining the general demurrer to count 1 of the petition.

█ It is contended that this petition sets out a cause of action for libel under *White* v. *Parks,* 93 *Ga.* 633 (20 S. E. 78). In that case the defendants, members of a merchants' association, published the plaintiff's name on a "deadhead" or delinquent debtors' list which was held to be actionable per se, the opinion holding that the "allegations amount, at least, to a direct charge that the plaintiff was falsely and maliciously 'blacklisted' in writing, and thus published to the world as a delinquent debtor, when in fact he owed nothing. Certainly this tended, to some extent, to injure his reputation, render him in some degree odious, and expose him to public contempt" which, under Code § 105-701, was actionable per se. The plaintiff in that case was informed by the defendants that "you will be refused credit by the members of [the Retail Merchants] Association until such arrearage is settled."

This court is bound by the decisions of the Supreme Court in the event of conflict with decisions of the Court of Appeals, and by the oldest decision of the Supreme Court in the event of conflict between the decisions of that court. The question therefore arises whether the *Mell* and *Estes* cases, as well as *Davis* v. *General Finance &c. Corp.,* 80 *Ga. App.* 708 (57 S. E. 2d 224) are reconcilable with the *White* case, the former all holding that it is not a libel per se to publish of another written language to the effect that he owes a debt which he refuses to pay, there being no imputation of insolvency and it not being alleged that the words caused special damage to the plaintiff in his trade or business. An attempt was made in *Ramey* v. *McCoy,* 183 *Ga.* 616, 621 (189 S.E. 44) to reconcile the *White* and *Estes* cases on the theory that in the latter "it was not denied that the plaintiff owed the money, and therefore on its face what was written by the defendant was the truth, and in a libel suit the truth can be proved to defeat a judgment." Unfortunately, although the words of the opinions might support this distinction, examination of the record in the *Estes* and *Mell* cases shows affirmative-

ly that the plaintiff alleged in each that he was not indebted and that the defendant's action was false and malicious, so we cannot rest upon this distinction. The earliest Supreme Court case we have noted, *Van Epps* v. *Jones*, 50 *Ga.* 238, 241, supra, held that an action for injury to the reputation would not lie where the defendant falsely protested a draft, stating in the protest that he had presented it to the plaintiff and payment was refused. The court queried: "Can it be contended that it is actionable to say of a lawyer that he will not pay his debts, much less a particular debt?" and then went on to state that the petition did not set forth words imputing a crime punishable by law, or a debasing act which would exclude from society, and that it was not made in reference to the plaintiff's profession. The action was upon written words, although it is denominated libel in one place and slander in another and no distinction is drawn between the two forms of action. It is recognized that the common law allowed causes of action for libel on words which, if merely spoken, would require the proof of special damages, for the reason that the printed word was considered productive of graver consequences than the spoken word, but even at common law an action for libel would not lie for a false statement that another owed the defendant money "unless there be words implying that he cannot pay." Odgers, Libel and Slander, p. 22, citing R. *v.* Coghlan, 4 F.&F. 316; McCann *v.* Edinburgh Roperie Co., 28 L.R. Ir. 24. That this is the general rule in this country see 33 Am. Jur. 78, § 60; 53 C.J.S. 67, § 23. There is no imputation of insolvency in this letter, and the letter was not written to persons extending credit to the plaintiff so that it might fairly be assumed that its result would be to deny her credit with merchants generally, as was the result in the *White* case. It cannot be doubted that to publish one falsely as a "deadhead" to the members of a retail merchants' association would tend to injure his reputation. To so publish one to an employer might do the same, but the results, if affirmative, would result in special damage which could then be shown. On this distinction the cases must rest; if it is invalid then *Van Epps* v. *Jones*, 50 *Ga.* 238, supra, being the older case, is necessarily controlling.

■ Count 2 incorporates all of the allegations of count 1 of

the petition and alleges that the acts therein set out constitute a tortious invasion of the defendant's right of privacy. In *Gouldman-Taber Pontiac* v. *Zerbst*, 213 *Ga.* 682 (100 S. E. 2d 881), where a letter to an employer in very similar language was alleged by an employee to constitute an invasion of the plaintiff's right of privacy (the plaintiff further contending that the debt mentioned in the letter was not due and owing at the time) it was held that a letter written by a creditor to an employer notifying him that his employee is indebted to the creditor and seeking the employer's aid in the collection of the debt does not set out a cause of action for violation of the right of privacy in this State. It was there emphasized that, where one seeks and obtains credit from another, she may expect that other to investigate her credit and reputation, and to communicate with her employer for information about her, as well as use reasonable means to persuade her to pay her bills, although the petitioner further alleged that the act of writing the letter was wilful and malicious. However, even under the *Zerbst* case the writing of such a letter might be actionable as an invasion of the right of privacy, provided that the contents thereof were not only untrue but that the writer knew them to be entirely baseless and unfounded, and wrote the false statements for the purpose of injuring the plaintiff because of malice and a personal desire to inflict injury. The petition here approaches this situation, but, construed against the pleader, it fails to allege positively any facts showing that the letter was not written by the defendants, a collection agency for physicians and surgeons, in a routine attempt to collect the account. The allegation that the letter was written without probable cause is based on the allegation that the plaintiff, the day before the letter was written, informed the defendants she owed Dr. Johnson nothing and never had owed him anything, but the firm, acting as agents of Dr. Johnson, did not necessarily have to take her word for this fact, but were authorized to believe and act upon the representation of this principal who turned the account over to them for collection, thus placing this case squarely within the ruling in the *Zerbst* case. Count 2 accordingly states no cause of action.

■ Counts 3 and 4 incorporate all the allegations of count 1,

with the addition of allegations, in count 3, that the entire damages are to the peace, happiness and feelings of the plaintiff under Code § 105-2003, and, as to count 4, that the action was for the purpose of annoying and harassing the plaintiff and the measure of damages is as set out in Code § 105-2002. Since a cause of action is not otherwise set out, the allegations as to damages add nothing, and, the actions not otherwise having been shown to be tortious, the fact that they were done for the purpose of annoying and embarrassing the plaintiff into paying the debt, the defendants having the right to assume that the debt was a bona fide obligation under the conflicting contentions of the parties, likewise fails to strengthen this count, since under the *Zerbst* case the writing of such a letter in the ordinary course of business, where there is a contention between the parties to the original contract as to the justness of the debt, is not actionable.

It follows that the trial court did not err in sustaining the general demurrers and dismissing the petition.

*Judgment affirmed. Gardner, P.J., and Carlisle, J., concur.*