### 42177.   CABANISS et al. v. HIPSLEY.

Argued July 8, 1966—Decided September 7, 1966—
Rehearing denied September 29, 1966—

*Johnson & Hayes, Herbert Johnson,* for appellants.

*Wall, Armstrong & Fuller, Alford Wall,* for appellee.

EBERHARDT, Judge. As Justice Cobb suggested in *Pavesich v. New England Life Ins. Co.,* 122 Ga. 190 (50 SE 68) the recognition of the right of privacy, bringing to our law a new concept, made it inevitable that there be developments in its later consideration. Though it has not been pointed out in the subsequent cases before the Supreme Court, and only incidentally by this court in *Ford Motor Co. v. Williams,* 108 Ga. App. 21, 29 (132 SE2d 206), Dean Prosser has analyzed the many privacy cases in an article entitled "Privacy," published in 48 Calif. L. Rev. 383 (1960), and in reviewing the cases he suggests that the invasion of privacy is in reality a complex of four loosely related torts; that there are four distinct kinds of invasion of four different interests of plaintiff; that there are four disparate torts under a common name. These four torts may be described briefly as: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness. We consider this analysis well-founded and take it as a starting point for our deliberations here.[1]

---

[1] There are, of course, other views. See, e.g., Bloustein, Privacy as an Aspect of Human Dignity: An Answer to Dean Prosser, 39 N.Y.U. L. Rev. 962 (1964), in which it is urged that the cases involving privacy are of one piece, a sort of continuum or a synechiology, and involve a single tort—the affront to human dignity. In his article, The Right of Privacy, 27 Ill. L. Rev. 237 (1932), Dean Green points out that the doctrinal term "right of privacy" threatens to become a catch-all for cases which defy a rule-of-thumb analysis and affords the judicial process a haven

### As To Both Defendants.

■ *Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.*

This aspect of the right of privacy as a theory of recovery can be disposed of summarily, for the petition was not so drawn nor was there evidence to sustain a verdict on it. For cases involving it, see *Newcomb Hotel Co. v. Corbett,* 24 Ga. App. 533 (101 SE 713) and *Newcomb Hotel Co. v. Corbett,* 27 Ga. App. 365 (108 SE 309), where there was an intrusion into plaintiff's hotel room by the house detective who mistakenly believed that unauthorized people were present; *Byfield v. Candler,* 33 Ga. App. 275 (125 SE 905), where there was an unauthorized entry into plaintiff's stateroom; *Young v. Western & A. R. Co.,* 39 Ga. App. 761 (148 SE 414), where there was an unauthorized and unlawful entry into plaintiff's house; *McDaniel v. Atlanta Coca-Cola Bottling Co.,* 60 Ga. App. 92 (2 SE2d 810), where eavesdropping equipment was placed in plaintiff's hospital room for the purpose of listening to her conversations with her husband and others; *Marcelli v. Teasley,* 72 Ga. App. 421 (33 SE2d 836), where the owner of the property came upon the premises occupied by plaintiff and threatened eviction in a loud and profane manner in the presence of others; *Walker v. Whittle,* 83 Ga. App. 445 (64 SE2d 87), where there was a mistaken identity in the making of an arrest without a warrant; and *Ford Motor Co. v. Williams,* 108 Ga. App. 21, supra, reversed on other grounds in 219 Ga. 505 (134 SE2d 32), where defendant, wrongfully suspecting plaintiff of having stolen certain goods, went to his house, broke in and removed the goods. See also *Pinkerton Nat. Detective*

---

for almost any case which raises a novel problem affecting interests of personality or interests in relation with other persons. He states that the tort cases which courts must frequently bring under the "privacy" rubric involve an interest of personality which has been subjected to the harm of appropriation. Interests of personality are broken down into seven phases: (1) physical integrity; (2) feelings or emotions; (3) capacity for activity or service; (4) name; (5) likeness; (6) history; and (7) privacy, privacy being only one of several phases of personality subject to appropriation.

*Agency v. Stevens,* 108 Ga. App. 159 (132 SE2d 119), containing elements of "false light" as well as "intrusion," where plaintiff charged defendant with harassingly spying on her in such a manner that neighbors got the impression that plaintiff was engaging in wrongful activity.

Some of these cases overlap and fill in the gaps left by trespass, nuisance, the intentional infliction of mental distress, and whatever remedies there may for the invasion of constitutional rights. See Prosser, supra, at 389-390, 392.

■ *Public disclosure of embarrassing private facts about the plaintiff.*

There are at least three necessary elements for recovery under this theory: (a) the disclosure of private facts must be a public disclosure; (b) the facts disclosed to the public must be private, secluded or secret facts and not public ones; (c) the matter made public must be offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances.

"The interest protected is that of reputation, with the same overtones of mental distress that are present in libel and slander. It is in reality an extension of defamation into the field of publications that do not fall within the narrow limits of the old torts, with the elimination of the defense of truth." Prosser, supra, at 398.

For cases which seem to fall in this category see *Bazemore v. Savannah Hospital,* 171 Ga. 257 (155 SE 194), involving the unauthorized publication of the photograph of a deceased child born with a deformity; *Gouldman-Taber Pontiac v. Zerbst,* 213 Ga. 682 (100 SE2d 881) and *Haggard v. Shaw,* 100 Ga. App. 813 (112 SE2d 286), where plaintiff's creditor had written to plaintiff's employer seeking assistance in the collection of an account; *Davis v. General Finance &c. Corp.,* 80 Ga. App. 708 (57 SE2d 225), where defendant sent a telegram to plaintiff dunning him for an unpaid account; and *Waters v. Fleetwood,* 212 Ga. 161 (91 SE2d 344), also containing elements of appropriation, where a newspaper was charged with unauthorizedly making, publishing and selling photographs of plaintiff's murdered daughter.

In the case sub judice there was no evidence to support ele-

ments (b) or (c) (embarrassing private facts), and consequently the verdict cannot be sustained under this theory.

Plaintiff testified that, as part of her act, she had her photograph taken to send out for advance billing and that the photographs were intended and used for publicity purposes and to sell her act to club owners. Before the occurrence complained of took place, she had played the Club Peachtree and the Gypsy Room in Atlanta. Prior to coming to Atlanta for her appearance, she gave her photographs to her agent who in turn supplied them to the club at which she was appearing. Her photograph was customarily put in the window and on advertising boards of the club at which she was playing; it was sent through her New York agent to her Atlanta agent to be used at the Club Peachtree where she was to appear. She knew that Club Peachtree had a copy of her photograph at the time she appeared there and that it was displayed in the glass showcase at the entrance of the club.

Plaintiff testified that in many circumstances an exotic leaves her photograph behind when leaving town. She usually attempted to pick hers up if it was in the window or showcase, but she did not attempt to do so at the Club Peachtree because it was not on display when she left. She did not ask for it, and it was left behind.

After her appearance at Club Peachtree plaintiff gave copies of the photograph involved to her Atlanta agent. Subsequent to the Club Peachtree appearance she played the Gypsy Room, which had her photographs and the right to use them. During the Gypsy Room appearance, and prior to the occurrence complained of, her photograph appeared in the magazine Gay Atlanta. She testified that her same photograph had appeared in magazines like Gay Atlanta hundreds of times all over the country when she was appearing at various clubs.

It thus appears from plaintiff's testimony that the photograph was not one which she wished to keep private, secluded or secret, nor was it one which was embarrassing, offensive or objectionable to her. She testified that this photograph and others similar to it had been put in circulation by her to obtain employment and to publicize herself and the clubs at which she was appearing. We do not think that plaintiff can complain about the disclosure of

374

matters which she has herself disclosed and consciously promoted.

In addition plaintiff testified on cross examination: "Q. It is a very attractive picture? A. It is a very lovely picture. Q. And shows a charming young lady? A. And I paid a lot of money for it. Q. Fine features and figure? A. I think I look very nice."

Plaintiff was what is commonly referred to as a strip-tease, and, by the very nature of her occupation, the facts disclosed were neither private nor embarrassing to her.

We prefer not to use the term "waiver" in our decision here. Without precise analysis this concept may receive indiscriminate application. See Feinberg, Recent Developments in the Law of Privacy, 48 Columbia L. Rev. 713, 726 (1948); Nimmer, The Right of Publicity, 19 Law & Contemp. Prob. 203, 204 (1954); Prosser, supra, at 410.

Three reasons are generally given for the loss of the right of privacy by public figures and celebrities: (a) they have sought publicity and consented to it and so cannot complain of it; (b) their personalities and their affairs already have become public and can no longer be regarded as their own private business; and (c) the press has a privilege, guaranteed by the Constitution, to inform the public about those who have become legitimate matters of public interest. Prosser, supra, at 411.

As to the loss of her right by "waiver," we rest our decision on reason (a), and we adopt the test as laid down in the crystallization of the right of privacy: "to whatever degree and in whatever connection a man's life has ceased to be private . . . to that extent the protection is to be withdrawn." Warren and Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193, 215 (1890). Or, as stated in *Pavesich*, supra, in terms of "waiver" at p. 199: "waiver carries with it the right to an invasion of privacy only to such an extent as may be legitimately necessary and proper in dealing with the matter which has brought about the waiver. It may be waived for one purpose and still asserted for another. . . ." See *Tanner-Brice Co. v. Sims*, 174 Ga. 13 (161 SE 819) and O'Brien v. Pabst Sales Co., 124 F2d 167 (5th Cir.), discussed in Division 4 of this opinion, for applications of the "waiver" doctrine.

■ *Publicity which places the plaintiff in a false light in the public eye.*

Unlike disclosure, this aspect of the invasion of the right of privacy does not require the invasion of something secret, secluded or private; it does require falsity or fiction.

"The false light cases obviously differ from those of intrusion, or disclosure of private facts. The interest protected is clearly that of reputation, with the same overtones of mental distress as in defamation. There is a resemblance to disclosure; but the two differ in that one involves truth and the other lies, one private or secret facts and the other invention." Prosser, supra, at 400.

For cases involving this aspect of the right of privacy, see *McKown v. Great A. & P. Tea Co.*, 99 Ga. App. 120 (107 SE2d 883), overruled in *Ford Motor Co. v. Williams*, 108 Ga. App. 21, supra, itself reversed on other grounds in 219 Ga. 505 (134 SE2d 32), where defendant went to plaintiff's place of employment charging her with having stolen a pen; *Pinkerton Nat. Detective Agency v. Stevens*, 108 Ga. App. 159, supra, also containing elements of "intrusion," where plaintiff charged defendant with harassingly spying on her so that neighbors got the impression she was engaging in wrongful activity; *Meeks v. Douglas*, 108 Ga. App. 424 (133 SE2d 768), where a search warrant was wrongfully and in bad faith taken against plaintiff to procure evidence of arson; and *Brown v. Colonial Stores*, 110 Ga. App. 154 (138 SE2d 62), where defendant inquired of plaintiff in the presence of others as to whether she had signed a check returned by the bank for insufficient funds. In *Goodyear Tire &c. Co. v. Vandergriff*, 52 Ga. App. 662 (184 SE 452), defendant, by fraudulently impersonating plaintiff, represented him as betraying a confidence by giving secret and confidential prices to a competitor, thus subjecting plaintiff to embarrassment and causing him to be held in contempt and ridicule. The facts of this case might have authorized recovery on the basis of appropriation had it been so presented. See Division 4 of this opinion.

"One form in which [the 'false light' invasion] occasionally appears . . . is that of publicity falsely attributing to the

plaintiff some opinion or utterance. A good illustration of this might be the fictitious testimonial used in advertising. . .." Prosser, supra, at 398. *Pavesich,* chiefly relied upon by plaintiff, seems clearly to fall within this category. There a likeness of plaintiff appeared in an advertisement of the defendant insurance company with a testimonial in which plaintiff was made to say, in effect, that he had secured insurance with the defendant company, on account of which his family was protected, and that he was receiving an income from an annual dividend on paid-up policies. Beside the likeness of plaintiff there was a likeness of an ill-dressed, sickly-looking person above which appeared the words, "Do it while you can. The man who didn't." It was alleged that plaintiff did not have, and had never had, a policy of insurance with the defendant company, and that this fact was known to his friends and acquaintances. Hence, in the light of extrinsic facts in which plaintiff became a self-confessed liar, the court in *Pavesich,* in addition to recognizing the right of privacy, held that a cause of action was stated for libel.

We note that in the fictitious testimonial cases, such as *Pavesich,* recovery would also be proper under the theory of "appropriation," discussed in Division 4. Hence, the court in *Pavesich* could have allowed recovery on this theory had it been presented as a basis of liability, but the only damages sought were general damages for bringing plaintiff in contempt and ridicule before the world and especially before his friends and acquaintances.

We do not think *Pavesich* or similar cases reach the case sub judice. The only falsity or fiction revealed by this evidence is that plaintiff was falsely pictured as appearing at the Atlanta Playboy Club under the stage name of "Dawn Darling." This evidence does not authorize a verdict for general damages for injury to plaintiff's reputation or to her sensibilities. There is no evidence to indicate that the stage name "Dawn Darling" is in a category materially different from that which would include the stage names "Melanie Lark" and "Charming Charmaine De Aire," which plaintiff used, nor is there evidence to indicate that the Atlanta Playboy Club was in any material

respect different from the types of clubs plaintiff customarily played, such as Club Peachtree or the Gypsy Room. She was not presented in a false light; she was revealed as an exotic strip-tease, which she was.

The evidence does not support the verdict on the theory of publicity which places the plaintiff in a false light in the public eye.

■ *Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.*

Unlike intrusion, disclosure, or false light, appropriation does not require the invasion of something secret, secluded or private pertaining to plaintiff, nor does it involve falsity. It consists of the appropriation, for the defendant's benefit, use or advantage, of the plaintiff's name or likeness.

For cases involving "appropriation" situations see *Pavesich,* supra; *Tanner-Brice Co. v. Sims,* supra; *Waters v. Fleetwood,* supra; and *Goodyear Tire &c. Co. v. Vandergriff,* supra.

"The interest protected [in the 'appropriation' cases] is not so much a mental as a proprietary one, in the exclusive use of the plaintiff's name and likeness as an aspect of his identity." Prosser, supra, at 406.

Hence, the main distinction between this aspect of privacy and the other three is the distinction between causes of action involving injury to feelings, sensibilities or reputation and those involving an appropriation of rights in the nature of property rights for commercial exploitation. See Gordon, Right of Property in Name, Likeness, Personality and History, 55 N.W.U.L.Rev. 553 (1960). This distinction was clearly indicated in Haelan Laboratories v. Topps Chewing Gum, Inc., 202 F2d 866 (2d Cir.), where the right of a person or his assignee to protect the publicity value of his photograph was expressly recognized and designated the "right of publicity."

In the Haelan case the plaintiff contracted with prominent baseball players for the exclusive right to use their photographs in connection with the sale of its products. Thereafter defendant was assigned a contract with the same players for the same purpose. In the litigation which followed, plaintiff maintained that defendant invaded plaintiff's exclusive right to use the

photographs; defendant, however, contended that none of plaintiff's contracts created more than a release of liability, because a man has no legal interest in the publication of his picture other than his right of privacy, i.e., a personal and non-assignable right not to have his feelings hurt by such a publication.

The court, however, rejected defendant's contention in this manner: "We think that, in addition to and independent of that right of privacy (which in New York derives from statute), a man has a right in the publicity value of his photograph, i.e., the right to grant the exclusive privilege of publishing his picture, and that such a grant may validly be made 'in gross,' i.e., without an accompanying transfer of a business or of anything else. Whether it be labeled a 'property' right is immaterial; for here, as often elsewhere, the tag 'property' simply symbolizes the fact that courts enforce a claim which has pecuniary worth.

"This right might be called a 'right of publicity.' For it is common knowledge that many prominent persons (especially actors and ball-players), far from having their feelings bruised through public exposure of their likenesses, would feel sorely deprived if they no longer received money for authorizing advertisements, popularizing their countenances, displayed in newspapers, magazines, busses, trains and subways." Prosser states that "[a]lthough this decision has not yet been followed, it would seem clearly to be justified."

Recognizing, as we do, the fundamental distinction between causes of action involving injury to feelings, sensibilities or reputation and those involving an appropriation of rights in the nature of property rights for commercial exploitation, it must necessarily follow that there is a fundamental distinction between the two classes of cases in the measure of damages to be applied. In the former class (which we take to include the intrusion, disclosure, and false light aspects of the privacy tort), general damages are recoverable without proof of special damages. *Pavesich v. New England Life Ins. Co.*, supra. In the latter class, the measure of damages is the value of the use of the appropriated publicity. See Gordon, supra, at 610-611; Nimmer, supra, at 216; Spring, Risks & Rights in Publishing,

etc. § 15 (2d Ed. 1956); O'Brien v. Pabst Sales Co., 124 F2d 167 (5th Cir.).

In the case sub judice it is clear from the record that plaintiff's photograph was appropriated (mistakenly or otherwise) for commercial exploitation without her consent. The difficulty here, however, is that the damages sought and recovered are not the kind of damages which can be awarded under this aspect of the privacy tort.

A similar problem was encountered in O'Brien v. Pabst Sales Co., supra. In that case plaintiff, a well-publicized football player, posed for football publicity pictures taken by the publicity department of his university and authorized that department to distribute his picture and biographical data to newspapers, magazines, sports journals and the public generally. Defendant purchased a copy of his picture from the university and published it on a calendar advertising Pabst Blue Ribbon Beer. Plaintiff complained mainly of the fact that the publication impliedly declared that he was endorsing or recommending the use of Pabst beer, whereas he was opposed to the use of alcohol among young people and was greatly embarrassed and humiliated when he realized that his face and name were associated with publicity for the sale of beer.

The court agreed with the trial court that plaintiff was not a "private person," the publicity he received being that which he had been constantly seeking and receiving (in other words, there was no public disclosure of embarrassing private facts, as we have ruled in Division 2, supra), and that reasonably construed, nothing in the calendar impliedly represented that plaintiff was a user of, or was recommending the use of, Pabst beer (thus holding that there could be no recovery under the false light theory, an even stronger holding under the facts of that case than what we have ruled in Division 3, supra).

In a dissenting opinion Judge Holmes, undeterred by procedural points, argued that under the facts pleaded plaintiff was entitled to recover the reasonable value of the use of the picture in trade and commerce for advertising purposes to the extent that such use was appropriated by the defendant. Judge Hutcheson was careful to point out in the majority opinion,

however, which affirmed a directed verdict for defendant, the problem similar to the one with which we are faced:

"Nothing in the majority opinion purports to deal with or express an opinion on the matter dealt with in the dissenting opinion, the right of a person to recover on quantum meruit, for the use of his name for advertising purposes. That was not the case pleaded and attempted to be brought. The case was not for the value of plaintiff's name in advertising a product but for damages by way of injury to him in using his name in advertising beer."

Even though, as we have indicated, the evidence here might have supported a verdict under the "appropriation" theory, and indeed plaintiff's testimony reveals that "appropriation" is her real complaint,[2] the damages sought and recovered were not authorized under this theory, because there was no proof of the advertising value of the use of her photograph in the manner and for the time it was appropriated. Recovery was sought and damages were awarded for the injury to feelings, sensibilities and reputation apparently under the theories of "disclosure" or "false light"; but the evidence does not support the verdict under these theories. Accordingly the judgment must be reversed.[3]

---

[2]"Q. Now, you would have had absolutely no objection to this picture appearing exactly like it was, had you been playing at the Playboy Club, would you? A. If I had been playing under contract at the Playboy Club, this picture could be shown with my name under it, not someone else's name." In response to a question as to whether plaintiff was complaining that the wrong name appeared under her photograph, plaintiff stated: "No, it's the fact that it was used—that, too, and it was used and I didn't put it to use and it's part of my—part of what I use to build myself up as an act. I'm not building publicity for anybody else. I'm building for me and these are my pictures. I paid for it."

[3]Our ruling here is not to be construed as indicating that in an "appropriation" situation in which "intrusion," "disclosure" or "false light" also appear, recovery is limited to damages for "appropriation" on the basis which we have outlined. *Pavesich*

## As to Defendant Cabaniss.

■ Under the appropriation theory it is not enough alone that there be appropriation of plaintiff's name or likeness; there must be an appropriation for the defendant's benefit, use or advantage upon which to predicate liability against that defendant. Prosser, supra, at 405. Recovery under this theory is measured by the unjust enrichment of the defendant and not by the injury to plaintiff's feelings or reputation (and we assume, but do not decide, to plaintiff's own commercial interests).

We have indicated in Division 4 that the evidence might have supported a verdict under the appropriation theory had the case been tried and proof made under it. The evidence would not have supported such a verdict, however, against defendant Cabaniss. His participation was merely passive, and his magazine Gay Atlanta was merely the conduit through which the advertising and publicity matter was transmitted by the Playboy Club to the public. The appropriation of plaintiff's photograph did not inure to his benefit, use or advantage, but to that of his advertiser. A different question might be presented had the evidence shown that Cabaniss used the advertisement of the Atlanta Playboy Club, with its photograph of plaintiff, to publicize or advertise *his magazine* (and had the case been properly tried under such a theory). The evidence did not show, however, that any advantage accrued to Cabaniss by any means.[4] It was uncontradicted that he had received

---

and *Goodyear Tire &c. Co.*, supra, where general damages were sought and allowed for injury to reputation or feelings rather than for "appropriation," illustrate the contrary. Nor do we rule here whether a count seeking damages for "appropriation," measured by the value of the use of the appropriated publicity, may be joined with a count seeking general damages for injury to reputation or feelings. See Cason v. Baskin, 155 Fla. 198 (20 S2d 243). Prosser poses a situation where all four forms of invasion occur—defendant breaks into plaintiff's home, steals his photograph, and publishes it with false statements about plaintiff in his advertising.

[4]We do not rule whether or not the advantage must be pecuniary. Prosser suggests that under statutes such as those in

the advertising including plaintiff's photograph without any knowledge of the appropriation. His advertising charges to the customer were on a basis of space used and the number of times the advertisement was run. There was no evidence

---

New York the advantage must be pecuniary but that the common law is probably not so limited. Prosser, supra, at 405. The only theory of advantage accruing to Cabaniss which we can conceive as being urged is a pecuniary one. We are unable to state, however, merely because advertising space is sold by Cabaniss to his customers, and Gay Atlanta is thus not a philanthropic institution, that any advantage gained by the appropriation of the advertiser carried over to the publisher of Gay Atlanta. See Peck v. Tribune Co., 154 F 330 (7th Cir.) (reversed as to libel count, privacy count not considered, in 214 U. S. 185, 29 SC 554, 53 LE 960). In that case plaintiff's photograph was published erroneously in an advertisement as that of Mrs. A. Schuman, a nurse, who, according to the advertisement, after years of constant use of Duffy's Pure Malt Whiskey, recommended it as the very best tonic and stimulant for that "weak, run-down and gone feeling." The action was against the newspaper which published the advertisement. In disposing of the privacy count, the court stated: "The difficulty with this count, and with the proof in support of it is that [the newspaper] stood in relation to the advertisement as printer and distributor only, acting without knowledge that the face printed and distributed was that of plaintiff in error, or was not that of the person whose face it purported to be; and as printer and distributor of matter offered as advertising matter, there cannot be indulged that presumption of malice that might possibly be indulged if the matter were printed as a part of the newspaper's collection of news." See also Harlow v. Buno Co., 36 D. & C. 101 (Pa. C. P.), in which it was held that a manufacturing concern which circulated display cards containing advertising photographs of plaintiff was not liable for invasion of privacy where the concern ordered the display cards from a publishing company which stated that it was authorized to use the photograph. The court stated that "[a]n examination of the theory of the [privacy] doctrine and the decided cases indicate that the invasion must be intentional and that defendant must knowingly publish the photograph of plaintiff without authority."

that he charged or received any more for this advertisement than would have been the case if plaintiff's picture had not appeared in it, or if the photograph of the artist who was in fact appearing at the club had been used. For this reason the evidence did not support the verdict against Cabaniss under any theory.

■ Nor was there any evidence upon which to predicate liability for punitive damages against defendant Cabaniss. Punitive damages were sought on the basis that not only was plaintiff's photograph used without her consent, but that it was used deliberately and maliciously with an intention on the part of the defendants to mislead the public and thereby damage petitioner's reputation.

The record is devoid of any evidence of an intentional misuse of the photograph on the part of defendant Cabaniss. He simply published the photograph given him by the agent of the other defendant, assuming that it was a photograph of "Dawn Darling." Notification of the mistake was not made to him while the advertisement was running, nor does the evidence disclose any circumstances from which it might be inferred that he had, or was in a position to have, actual knowledge of the mistake.

Nor do we think that there was any duty on the part of defendant Cabaniss to discover and prevent the mistake ("should have known") so that a failure to do so would authorize an award of punitive damages.

"Punitive damages can be awarded upon the same basis as in other torts, where a wrongful motive or state of mind appears, but not in cases where the defendant has acted innocently, as for example in the belief that the plaintiff has given his consent." Prosser, supra, at 409, citing Fisher v. Murray M. Rosenberg, Inc., 23 NYS2d 677 (175 Misc. 370) (Sup. Ct.), and Barber v. Time, Inc., 348 Mo. 1199 (159 SW2d 291). See also Peck v. Tribune Co. and Harlow v. Buno Co., supra, note 4.

In Myers v. U. S. Camera Pub. Corp., 167 NYS2d 771 (9 Misc.2d 765) (N.Y. City Ct.), it was held that the publishers of a book "knowingly" published the photograph of plaintiff within the meaning of the New York privacy statute so as to be

liable for exemplary damages where they merely assumed that permission for publication of the photograph had been obtained from plaintiff by the agency from whom the publisher *purchased* the photograph. However, as stated by the court in that case, "[a]n ordinary photograph is not here involved." It was a full body photograph of a nude woman revealing her identity, and there could be no question that in purchasing it the publisher had intended to get and make use of that particular one.

In Kerby v. Hal Roach Studios, 53 Cal. App. 2d 207 (127 P2d 577), defendant made use of a name which also happened to be that of plaintiff, with no intent to refer to her and without even knowing of her existence. The court stated that these facts tended to show lack of malice and should avert an award of punitive damages. In Emanuel v. Free Lance Photographers Guild, 219 NYS2d 626 (28 Misc.2d 503), the New York court stated per curiam: "The record satisfactorily establishes that defendants sold plaintiff's photograph in good faith and in the honest belief that it was the photograph of another female, from whom they had obtained for a consideration a release to sell it, and in the absence of proof that defendants knowingly used plaintiff's portrait or picture, exemplary damages may not be awarded." In another New York case, Lane v. F. W. Woolworth Co., 11 NYS2d 199 (171 Misc. 66) (Sup. Ct. Special Term), it was held that an answer alleging that defendant, in buying from its manufacturer lockets which contained plaintiff's photograph to illustrate use of the locket, had no knowledge that the photograph represented plaintiff or that the consent of plaintiff had not been obtained, stated a good defense to the claim for exemplary damages.

In closing this division of our opinion we review Flake v. Greensboro News Co., 212 N. C. 780 (195 SE 55), which, while not dealing specifically with punitive damages, held that where plaintiff's photograph was published by mistake and without malice as that of another person, nominal damages only were recoverable for invasion of the right of privacy.

In that case plaintiff was a vocalist, recording artist and radio entertainer who, in furtherance of her career, posed for photographs in a bathing suit at the studios of CBS. These photo-

graphs were disseminated widely for publicity purposes with plaintiff's consent and approval. By some unexplained mistake one of these photographs was published in a newspaper advertisement representing plaintiff as a member of "Folies de Paree," which was a vaudeville show—a sensual performance, or sex parade, according to plaintiff—which advertised its "Parisian Revue" through a system of "tie up" advertising whereby a merchant and the local theater joined in the advertisement of both the product of the merchant and the theater performance. Pursuant to this plan a bakery and a theater published the advertisement complained of in which plaintiff was mistakenly represented as being Mlle. Sally Payne, an exotic red-haired Venus and the leading lady of "Folies de Paree," a sparkling Parisian Revue stage production, and having a sylph-like figure which may be retained by eating more of Melt's rye and whole wheat bread.

For this mistaken use of her photograph plaintiff sued the bakery, the theater and the newspaper for libel and invasion of privacy. The jury returned a verdict for $6,500 against all defendants, finding specifically that the publication, in the light of surrounding facts and circumstances, brought plaintiff into public ridicule and contempt.

The Supreme Court of North Carolina held that the publication was not libelous per se and that plaintiff, without the allegation and proof of special damages, was entitled to a judgment for nominal damages only for the invasion of her right of privacy, citing *Pavesich*. The court stated in conclusion that "there was error in the judgment below and that the motion of the defendants for a judgment of nonsuit should have been sustained as to plaintiff's cause of action sounding in libel and that there should be a new trial on the cause of action alleging the unauthorized use of the image of plaintiff's features and person in connection with said advertisement. Upon the present record, from which it appears that said photograph was used by mistake and without malice and that the defendants immediately desisted from the use thereof upon the discovery of the mistake and made due apology therefor, the plaintiff would be entitled to a judgment for nominal damages only."

In the case sub judice there was simply no evidence of wrong-

doing, fault, wrongful motive or state of mind on the part of defendant Cabaniss, and the award of punitive damages was unauthorized. Moreover, punitive damages are not recoverable unless a right to recover general, nominal or special damages is shown. *Foster v. Sikes*, 202 Ga. 122, 126 (42 SE2d 441); *Beverly v. Observer Pub. Co.*, 88 Ga. App. 490(4) (77 SE2d 80).

*As to Defendant On The Town, Inc.*
*d/b/a Atlanta's Playboy Club.*

■ As is indicated by our holding concerning the matter of appropriation, if the jury concludes from the evidence that the use of plaintiff's photograph by defendant On The Town, Inc., in its advertising of the Atlanta Playboy Club, was unauthorized, she would be entitled to recover its advertising value for the time and manner in which it was appropriated, as actual damages.

While there was no evidence to show that the officers or agents of this defendant intentionally used plaintiff's photograph or gained actual knowledge of the mistake while the advertisement was running, it does appear that the advertisement ran for a considerable length of time[5] while "Dawn Darling" was appearing at the club. Thus the jury might find that the club manager and other officers and agents of the defendant had ample means and opportunity of discovering that the photograph captioned "Dawn Darling" in the advertisement was not that of the performer called "Dawn Darling" actually appearing at defendant's club. Keeping in mind that an award of punitive damages is to be made only when it appears that there were aggravating circumstances, *either in the act or the intention* under *Code* § 105-2002, mere negligence on the part of the defendant in failing to discover the error made in delivering plaintiff's photograph for publication in the advertisement instead of that of the performer, "Dawn Darling," would not justify an award, for "mere negligence can never amount to such aggravating circumstances. . ." *Louisville &c. R. Co. v. Young*, 112 Ga. App. 608, 613 (145 SE2d 700). But if the jury finds that there was an unauthorized appropriation from the facts proven, and should further find that

---

[5]The petition alleged that the photograph was published for approximately ten weeks; the evidence indicated that the advertisment ran for some four months.

the acts of the defendant have been of a character to import premeditation or knowledge and consciousness of the appropriation and its continuation, an award of punitive damages would be authorized. Cf. *Cook v. Southern R. Co.*, 53 Ga. App. 723, 728 (187 SE 274).

### Special Grounds.

■ Evidence of a witness, Johnny O'Leary, to the effect that it was *not* the custom of the trade or industry in Atlanta to publish in advertising the photographs of artists and actors carrying the names of other people, was admitted over objection that it was wholly irrelevant, there having been no pleading or evidence as to what the custom may have been in this respect. This was error. Admission of negative evidence should generally be restricted to a rebuttal of other evidence on the subject, though there are exceptions. In proper instances proof may be offered of what a custom of the trade is, but to allow proof of what it is *not* as an original proposition leads to an unfettered roaming into a maze of irrelevant and immaterial testimony.

■ Error is enumerated on the denial of a mistrial sought because of certain statements of counsel made in the presence of the jury. Since there must be another trial and this is not likely to recur, we make no ruling on it.

■ Error is enumerated on a portion of the charge wherein the court instructed the jury, as to the form of their verdict, that if they should award damages under count 1 of the petition they might, if they saw fit, award damages under count 2. There is no merit in the claim of error on the ground that in this connection the court should have charged that before awarding punitive damages under count 2 it must have appeared that the violation of plaintiff's privacy was done maliciously, for an examination of the charge reveals that this was very clearly and fully included; indeed it was done just preceding that portion to which exception is made. See *Brown v. Matthews*, 79 Ga. 1 (1) (4 SE 13); *Matthews v. Smith*, 109 Ga. App. 504 (136 SE2d 457).

*Judgment reversed with direction that a judgment n.o.v. be entered for the defendant Cabaniss and a new trial be granted the defendant On The Town, Inc. Bell, P. J. and Jordan, J., concur.*