**AMERICAN CREDIT CORPORATION,**
a North Carolina corporation

v.

**UNITED STATES CASUALTY COMPA-
NY, a New York corporation and
William R. Beverly.**

**Civ. A. No. 10238.**

United States District Court
N. D. Georgia,
Atlanta Division.

Dec. 31, 1969.

Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for plaintiff.

Heyman & Sizemore, O'Kelley, Hopkins & VanGerpen, Atlanta, Ga., for defendants.

ALBERT J. HENDERSON, Jr., District Judge.

## ORDER

Presently before the court is a partial motion for summary judgment, pursuant to which the court must decide whether the various theories asserted in the counterclaim of the defendant Beverly fail to present a genuine issue of material fact. But first, the court must decide whether the claim for defamation of character in the counterclaim was barred by the statute of limitations, and whether the amendment to the counterclaim was timely. The court decides all questions against Beverly, the counterclaimant.

Plaintiff American Credit Corporation (hereinafter referred to as American Credit) initiated this action to recover under two Brokers Blanket Bonds issued by defendant United States Casualty Company. The bonds had been issued to insure the plaintiff against losses resulting from "dishonest acts" of its employees. The complaint was filed on June 24, 1966, and initially named as defendant only the United States Casualty Company (hereinafter referred to as U. S. Casualty). On June 27, 1968, the complaint was amended to join as a defendant William R. Beverly, who was alleged to have caused the plaintiff losses as a result of specified dishonest and fraudulent acts. (Beverly was a former employee of American Discount Company, which had merged into American Credit.) On July 26, 1968, Beverly filed an answer to the complaint, which included a counterclaim against American Credit, alleging that it had "influenced, pursuaded and induced" three successive employers of Beverly during the period since his employment with plaintiff, to discharge him from their employ, thereby wrongfully depriving him of his means of obtaining livelihood. In addition, he alleged that plaintiff had contacted his friends and associates, charging him with dishonest acts, and had harassed him on the job and while at home in such a manner as to affect his relationship with business associates, friends, and family.

In response to the counterclaim, American Credit filed interrogatories addressed to Beverly, in which it inquired of him the nature of such communications, and from whom they were made, and to whom. On March 5, 1969, Beverly filed his answers to these interrogatories, naming eleven individuals to whom such communications had been made and five representatives of American Credit whom he alleged to have made such communications. In response to Beverly's answers to its interrogatories, plaintiff filed affidavits of a num-

ber of individuals. In fact, these affidavits were obtained from all except five of the persons named in Beverly's answers to its interrogatories. Of these five, two had died, and three, Smith, Farthing and Williams, could not, after "diligent efforts by the plaintiff", be located.

In addition to these affidavits, American Credit relies on Beverly's deposition, taken by it in three parts, on January 16, January 21, and April 23, 1969. In support of its motion, plaintiff points to the fact that, in his deposition, Beverly could not state that he had any personal, independent knowledge that any representative of American Credit had contacted any individual which he had named, or that any individual had been contacted by American Credit at all. To the contrary, Beverly asserted in his deposition that he had a "belief" that such communications had been made, but reiterated that he had no personal, independent knowledge of any communications.

After the plaintiff's motion for partial summary judgment was filed, Beverly filed an amendment to his counterclaim, which the court allowed, subject to objection. Defendant has objected, moving to strike the amendment to the counterclaim. In essence, the amendment to the counterclaim states that American Credit had harassed Beverly in that it had made a number of phone calls to his home and to his work, accusing him of dishonesty, fraud against his employer, and of general bad character. As a result, Beverly alleged that he had reached the point of ruination of family and credit, severe emotional distress, mental pain and suffering, that he had been constantly upset, in a state of nervousness and anxiety, and that he had suffered from headaches, loss of sleep, indigestion and weight loss. Beverly alleged that these acts had been wanton, malicious and intentional acts on the part of plaintiff, and that they had caused him to be unable to satisfactorily perform his work, and together with other reasons, had caused him to be discharged from employment three times. Beverly claimed that this treatment of him amounted to an invasion of his right to privacy, and an intentional infliction of mental distress upon him. He asked punitive damages in order to deter the plaintiff from repeating these acts.

Plaintiff strenuously objected to the interposition of the amendment to the counterclaim at a time at which its previously filed motion for summary judgment was pending. It alleged that Beverly had not been diligent in his pursuit of his counterclaim, and that the court should not allow the piecemeal assertion of legal theories in support of Beverly's position.

In response, Beverly took the position that the amendment to the counterclaim was based on the same factual framework on which the original counterclaim had been based. He asserted that under the theory of notice pleading, the plaintiff had been on notice of all theories which might have been asserted under those facts.

Thus the court must decide four issues: (1) Will the amendment to the counterclaim be allowed as timely or will the plaintiff's motion to strike be granted? (2) Did the Georgia statute of limitations on injuries to the reputation, Ga.Code Ann. § 3–1004 (Supp.1969), bar Beverly from bringing his counterclaim, at least to the extent that it was based on injury to reputation? (3) Do American Credit's affidavits, together with Beverly's lack of independent knowledge that the alleged communications took place between representatives of American Credit and his employers, eliminate any genuine issue of material fact, such that it can be said that, under neither the theory of wrongful interference with livelihood nor the theory of defamation of character, could a jury find for the plaintiff? (4) Is there any genuine issue of material fact as to

the theories of invasion of privacy and the intentional infliction of emotional harm?

In its complaint, plaintiff stated that, from approximately June 8, 1963, until December 31, 1964, it sustained losses in the aggregate amount of $52,030.22, as the result of the dishonest and fraudulent acts of Beverly, the employee of American Discount, which had merged into it. However, plaintiff asserts that it did not discover these acts of Beverly until or about July 8, 1965, as to a portion of these losses, and continued to discover additional loss until about September 16, 1965. On August 2, 1966, Beverly executed an affidavit, in which he stated at some length how he had defrauded American Discount by accepting $25.00 kickbacks from car salesmen for accepting otherwise unacceptable applications for credit to facilitate car sales, by forging and cashing checks, by falsifying other applications for credit, by cashing checks intended for application to outstanding loans due American Discount, and similar acts. Beverly stated that his affidavit confirmed a number of earlier statements made by him, and that it was made without promise, threat, or coercion. However, on February 29, 1968, Beverly executed a second affidavit, in which he repudiated completely all of the statements made in his earlier affidavit. The second affidavit stated generally that he had approved the unacceptable credit risks under a relaxed standard, designed to provide the American Discount Company with a large body of accounts receivable, in order to facilitate the merger between the American Discount Company and American Credit. Beverly stated that the first affidavit was given under:

> * * * such pressure and threats that Affiant's free will was overcome and that he was coerced into making same in order to satisfy plaintiffs and to protect his family and job * * *

Beverly's February 29, 1968, Affidavit. Largely as a result of the second affida-vit, Judge Lewis Morgan of this court denied the plaintiff's partial motion for summary judgment, but granted plaintiff's motion to add Beverly as a party defendant.

In summary, Beverly's deposition testimony was that he had no personal, independent knowledge of any contact from American Credit to any employer, friend, member of his family, or other associate, charging him with dishonest fraudulent acts. However, he had a strong "belief" that such a contact had been made, and that it had been the cause of his being discharged from either Continental Acceptance Corporation (hereinafter referred to as Continental), National Discount Company, or Consumer Credit Counseling Service (hereinafter referred to as Consumer Counseling), or all of these employments. As far as he knew, neither his wife nor his friends and neighbors knew of either this lawsuit or the substance of the charges leveled against him.

■ The court will consider each of the issues individually. First, should American Credit's motion to strike the amendment to the counterclaim be granted, or should the court allow the amendment? The amendment asserted two theories: invasion of the right of privacy and intentional infliction of emotional harm. These theories were based on essentially the same facts as was the original theory, to-wit, wrongful deprivation of a means of livelihood. Beverly's allegations were, in brief, that he had been deliberately harassed and intimidated in such a manner as to embarrass him before his friends, associates and family, and to inflict upon him emotional harm. In his amendment, plaintiff claims that, as a result of the above harassment, he has suffered severe mental and emotional distress, with attendant loss of weight, loss of sleep, and other physical symptoms. Under the rule of notice pleading as found in Fed.R.Civ.P. 8(a), the court is of the opinion that the allegations of the origi-

nal counterclaim were sufficient to place American Credit on notice of the theories of invasion of the right of privacy and intentional infliction of emotional harm. By the same reasoning, the court is not persuaded by Beverly's argument that, although the amendment to the counterclaim should be allowed, because it was filed after the motion for summary judgment was filed, it should not be subject to the motion for summary judgment. Accordingly, the court hereby denies American Credit's motion to strike, and would hold that the amendment was subject to the motion for summary judgment, regardless of the fact that it was filed after the motion for summary judgment was filed. However, American Credit has filed, as an alternative to its motion to strike, a motion to dismiss for failure to state a claim. The fact that the court must, under Fed.R.Civ.P. 12(b), treat the motion to dismiss as a summary judgment (if a portion of the record outside the pleadings is considered), obviates the question concerning the motion for summary judgment.

As to the question whether the claims involving the injury to reputation were barred by the statute of limitations, Ga. Code Ann. § 3–1004 (Supp.1969) the court notes the provision of Ga.Code Ann. § 3–810 (Supp.1969):

> The limitations of time within which various actions may be commenced and pursued within this State to enforce the rights of the parties are extended, only insofar as the enforcement of rights which may be instituted by way of counterclaim and cross-claim, so as to allow parties, up to and including the last day upon which the answer or other defensive pleadings should have been filed, to commence the prosecution and enforcement of rights by way of counterclaim and cross-claim, providing that the final date allowed by such limitation for the commencement of such action shall not have expired prior to filing of the main action.

Beverly argues that the effect of this statute is to suspend the running of the statute of limitations from the date of the filing of the main action against the U. S. Casualty Company, June 24, 1966. American Credit did not begin to discover the alleged dishonest and fraudulent acts of Beverly until on or about July 8, 1965, so June 24, 1966, is clearly within the period of the one year statute for defamation of character. However, American Credit asserts that under the meaning of the statute, the "main action", as to Beverly, was begun with the filing of the amendment joining him as a defendant, on June 27, 1968. In support of its argument, American Credit illustrates as follows:

> For example, Motorist A sues Motorist B to recover for personal injuries incurred in a collision between their two vehicles one year and 364 days earlier. If B answers within 20 days of service of the complaint, he may also file a counterclaim for personal injuries, even though the two year statute of limitations of Ga.Code Ann. § 3–1004 would have otherwise expired and barred his counterclaim but for the provisions of Ga.Code Ann. § 3–810. Motorist B cannot, however, counterclaim against A for slander based on defamatory statements made by A in the presence of witnesses immediately following the wreck, since the one-year statute of limitations on such a claim for slander would have expired almost a year prior to the filing of the complaint by A. If B wanted to sue for slander, it was incumbent upon him to do so within one year or be forever barred.

Reply Brief of Plaintiff in Support of Motion for Partial Summary Judgment, filed October 20, 1969.

Nevertheless, the court disagrees with American Credit as to the meaning of the words "main action". Black's Law Dictionary 1105 (4th Ed. 1957) defines the word "main", in pertinent part, as "principal, chief, most important in size,

extent or utility." If, in a given case, there is a "main action" as to one party, and a "main action" as to another party, a conflict of definition exists. By definition, *i.e.*, "*most* important in size, extent * * *" (emphasis added), only one "main action" in a case can exist.

■ Using plaintiff's example, the court hereby demonstrates its view of § 3–810. Suppose Motorist A sued Motorist B to recover for personal injuries incurred in a collision between their two vehicles one year and 364 days earlier. Then, two years and one day after the accident, A joins Motorist C, who was also involved in the collision, alleging that B and C are joint tort feasors as against him. By the simple device of waiting until two years have passed to join C in the litigation, and saying, under American Credit's theory of § 3–810, that the "main action", as against C, began only when the amended complaint joining C as a defendant was filed, A may avoid with impunity C's counterclaims against it for damages resulting from personal injuries suffered in the collision. The result is unjust. Accordingly, the court holds that, under the circumstances presented here, Beverly's claim involving injury to reputation is not barred by Ga.Code Ann. § 3–1004 (Supp.1969).

Because of the court's decision on the first two issues, it must now decide the merits of the question whether there is any genuine issue of material fact presented by Beverly's counterclaim. Basically, Beverly points to two sets of circumstances, from each of which arise two different legal theories of recovery. First, he alleges that representatives of defendant contacted several of his employers in succession, giving them information about him which caused them to fire him. From this alleged set of circumstances, Beverly asserts that American Credit not only has deprived him wrongfully of his means of obtaining a livelihood, but also that American Credit has slandered him. In his second set of circumstances, however, Beverly alleges that, for the period from May, 1965, to the time of filing of the counterclaim, American Credit maliciously and wilfully contacted and harassed him both while on his job and at his home in such a way as to affect him, both directly and indirectly, as to his relationships with his employers, business associates, friends, and family. Beverly's Counterclaim, paragraph 10. In the amendment to his counterclaim, Beverly renewed these allegations, adding that, as a result of them, he had remained constantly upset, and in an extreme state of nervousness, anxiety and irritability, suffering from headaches, loss of sleep, indigestion and loss of weight, all as a result of the acts of American Credit in harassing him. Further, he stated that these acts had rendered him incapable of fully and satisfactorily performing his work, and that his incapacity had been a contributing factor to his being discharged from his employment on three occasions. As legal theories, Beverly asserted that these acts had constituted an invasion of his right of privacy, and an intentional infliction of mental distress.

Thus, for alleged malicious communications of detrimental information to his employers, Beverly charged American Credit with wrongful deprivation of livelihood, and defamation of character. In addition, for alleged malicious harassment of him at home and at work, he charged American Credit with invasion of the right of privacy and intentional infliction of emotional harm.

With regard to the first set of circumstances, the alleged communications to his employer that Beverly had engaged in dishonest acts while an employee of American Discount Company, American Credit has attempted to demonstrate by affidavit that no such communication was either made or received. Thus, of eleven people named by Beverly as having received such communications and of five persons named by him as having made them, American Credit has

presented affidavits of all but five. These affidavits state unequivocally that, in the case of those alleged to have made communications, no such communications were made, and in the case of those alleged to have received communications, no communications were received.

Beverly makes much of the fact that, while two of the five persons from whom affidavits were obtained have died, American Credit has been unable to procure affidavits from the other three, Smith, Farthing and Williams. However, American Credit asserts that it has been unable to locate these three persons after "diligent efforts". Further, American Credit points to the fact that, despite the inability to locate these three individuals, each of them was in the category of a person alleged to have received a communication from a representative of American Credit. For this reason, American Credit argues that affidavits from these three are not necessary to prove its case, because it has submitted affidavits from each of the persons alleged to have made such communications to the missing persons.

■ Under Fed.R.Civ.P. 56(e), the submission of affidavits in connection with a motion for summary judgment has the effect of shifting the burden to the respondent to respond further, "* * * by affidavits or as otherwise provided in this rule * * *", setting forth "specific facts" showing that there is a genuine issue for trial. If the respondent does not do so, summary judgment may be entered against him. Nevertheless, Beverly has contented himself with the statement that American Credit's motion for partial summary judgment should be denied as a matter of law because it is not shown that the testimony of the three missing persons, Jack Farthing, Frank Smith and Stacey Williams, would be contrary to Beverly's contentions. While Beverly has argued that American Credit may not force him to try, by affidavits, material issues of

his claim on which he is otherwise entitled to trial, the court is of the opinion that the affidavits have eliminated from the case any genuine issue of material fact.

■ In other words, if the testimony of the affiants, as it appears in their affidavits, were balanced against all of the evidence presented by Beverly, primarily his deposition testimony, the court would be forced at the conclusion of the evidence at a trial, to direct a verdict for American Credit. Thus, at the juncture at which American Credit filed its affidavits, it was incumbent upon Beverly to assert "specific facts" showing that there was a genuine issue of material fact for trial. He has failed to do so. Accordingly, summary judgment is appropriate for Beverly's theories of wrongful interference with livelihood and defamation of character.

Therefore, summary judgment is hereby granted for American Credit against Beverly as to Beverly's counterclaim, on the theories of wrongful interference with the means of obtaining a livelihood and injury to reputation.

As an alternative to its motion to strike Beverly's amendment to his counterclaim, American Credit filed a motion to dismiss the amendment to the counterclaim for failure to state a claim for which relief could be granted. The theories on which Beverly based his amendment to the counterclaim were invasion of the right of privacy and intentional infliction of emotional harm. The facts on which he relied were essentially that representatives of American Credit had harassed and intimidated him maliciously both at home and at work, to the extent that he could no longer effectively perform his duties. Further, he alleged that he had been publicly embarrassed.

■ The tort of invasion of privacy, as it is known in Georgia, is divided into four parts, or categories. Cabaniss v. Hipsley, 114 Ga.App. 367, 370, 151 S.E. 2d 496 (1966).

These four torts may be described briefly as: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

Categories (2) and (3) are not applicable here, because there has been no public disclosure or publicity at all in this case. *See* Peacock v. Retail Credit Company, 302 F.Supp. 418, 423, n.3., 424 (N.D. Ga. 1969). Beverly stated in his deposition testimony that his friends, associates, and family knew nothing of either his alleged misdeeds or the suit which has been filed against him. Further, even accepting as true his allegation that representatives of American Credit contacted his employers with information that he had defrauded them, the court notes that the right to privacy has been held inapplicable in cases where plaintiff's creditor had written to plaintiff's employer seeking assistance in the collection of an unpaid account. *See, e.g.,* Gouldman-Taber Pontiac, Inc. v. Zerbst, 213 Ga. 682, 100 S.E.2d 881 (1957); Haggard v. Shaw, 100 Ga.App. 813, 112 S.E.2d 286 (1959). Accordingly, Beverly has failed to demonstrate that a genuine issue of material fact exists as to (2) public disclosure of embarrassing private facts about him, and (3) publicity which has placed him in a false light in the public eye.

There has been no allegation which would bring the claim for right of privacy under category (4), appropriation for American Credit's advantage of Beverly's name or likeness.

■ The heading to which Beverly's claim of invasion of privacy is most similar is found in category (1), *i.e.,* intrusion upon his seclusion or solitude, or into his private affairs. The cases under this heading are reviewed in Cabaniss v. Hipsley, *supra,* 114 Ga.App. at

371–372, 151 S.E.2d 496, and Peacock v. Retail Credit Company, *supra,* 302 F.Supp. at 422–423. These cases require that the intrusion must be physical, and analogous to a trespass in the plaintiff's home, Ford Motor Co. v. Williams, 108 Ga.App. 21, 132 S.E.2d 206 rev'd on other grounds, 219 Ga. 505, 134 S.E.2d 32 (1963), or other quarters, McDaniel v. Atlanta Coca-Cola Bottling Co., 60 Ga. App. 92, 2 S.E.2d 810 (1939) (hospital room); Byfield v. Candler, 33 Ga.App. 275, 125 S.E. 905 (1924) (ship's stateroom). Considering the facts of this case, the relatively mild-mannered telephone conversations and personal conversations between Beverly and Payne hardly amounted to a physical invasion of the right of privacy. Further, in comparison with the Georgia cases cited above, the conferences between Beverly and the representatives of American Credit in the room at the Capri Motel neither constituted an invasion of plaintiff's solitude nor allowed any inferences which might have amounted to exposing embarrassing facts about him. Indeed, the anonymity of the private motel room seems ideal as a meeting place designed to avoid publicity and any embarrassment which might result therefrom. In fact, the only visit to Beverly's office which he did not characterize as a "friendly" visit, was that of Sachs, who left the office after Beverly's request to do so, and talked to Beverly outside. The abrupt entrance and demeanor of Sachs excited interest, but hardly distrust and suspicion. Compare Pinkerton National Detective Agency v. Stevens, 108 Ga.App. 159, 132 S.E.2d 119 (1963), which involved the overt and prolonged trailing of plaintiff by a detective agency in such a manner as to excite distrust and suspicion of neighbors. Accordingly, under no view of the facts as revealed in deposition testimony, is there, under Georgia law, an issue for trial on invasion of his seclusion, solitude, or private affairs.

In brief, the court knows of no authority in Georgia, and Beverly has cit-

ed none to it, which, under the circumstances presented, would entitle Beverly to a recovery for invasion of the right of privacy.

■ Therefore, as to all categories of the invasion of privacy, American Credit's motion to dismiss is hereby converted to a motion for summary judgment, under Fed.R.Civ.P. 12(b). Accordingly, the court hereby grants summary judgment for American Credit as to the invasion of privacy amendment to the counterclaim. As to the theory of intentional infliction of mental distress, the court is likewise of the opinion that Beverly has failed to establish a genuine issue of material fact. Beverly states to the court that American Credit has committed "acts of extreme outrage and misconduct", in that it has called him repeatedly at home and at work, accusing him of dishonesty, fraud, and general bad character. In addition, Beverly refers to other contacts which have humiliated and embarrassed him. He cites no authority to support his contention that he is entitled to recovery under his view of the facts.

In the absence of authority from Beverly, American Credit refers the court to W. Prosser, Torts § 11 at 49–50 (3rd Ed. 1964):

> [T]he tort action has been used as a potent counter-weapon against the more outrageous high-pressure methods of collection agencies and other creditors. These are sufficiently well known, ranging from violent cursing, abuse, and accusations of dishonesty, through a series of letters in lurid envelopes bearing a picture of lightning about to strike, which repeatedly threaten arrest, ruination of credit, or a suit which is never brought, or telephone calls around the clock, or attempts to pile up the pressure by involving the plaintiff's employer, his relatives, his neighbors or the public in the controversy, up to a call to a neighbor's telephone for an "emergency message" which will be a "great shock", and a proposal to a woman to "take it out in trade". It is seldom that any one such item of conduct is found alone in a case; and the liability usually has rested on a prolonged course of hounding by a variety of extreme methods. Similar outrageous bullying tactics on the part of insurance adjusters seeking to force a settlement, or evicting landlords seeking to harass unwanted tenants, have been subjected to the same liability.

(footnotes omitted). In the light of the discussion concerning the invasion of privacy, it is seen that American Credit's contacts with Beverly were innocuous and not the outrageous type of conduct described by Dean Prosser. To be specific, the court adverts to Beverly's admission on deposition that neither his family, friends, nor associates knew of either the substance of the charges against him or the suit which had been filed against him. Accordingly, it is the opinion of the court that the conduct of American Credit, as reflected by the files and records of this case, was not the outrageous and extreme conduct pursuant to which it could be held liable as intentionally inflicting emotional distress.

Therefore, pursuant to Fed.R.Civ.P. 12(b), the court treats American Credit's motion to dismiss as a motion for summary judgment, having considered the record of the case (other than the pleadings) in connection with the motion. The motion is hereby granted for American Credit against Beverly as to this issue.

To summarize, the court grants summary judgment for American Credit against counterclaimant Beverly, as to all of the theories of law and allegations of fact contained in his counterclaim and amended counterclaim.