### 35604. DOE et al. v. SEARS et al.
### 35647. SEARS v. DOE et al.

NICHOLS, Chief Justice.

The issues in this appeal and cross-appeal are whether the Open Records Laws, Code Ann. § 40-2701 et seq., apply to the Housing Authority and, if so, whether certain tenants of the authority have an unwaived constitutional, statutory, or common law right of privacy that would be infringed upon by disclosure of records

which identify those tenants and state the amounts they owe as unpaid rents.

The issues arise as a result of investigative reporting by The Atlanta Constitution, a daily newspaper. Edward M. Sears, Jr., as a citizen and as managing editor of the newspaper, asked permission under the Open Records Laws to inspect certain computer print-outs kept by the AHA as part of its business records. The print-outs contain the names, addresses, sources of income and rents owed by tenants.

Sears' stated purpose for inspecting the print-outs was to determine if certain public housing tenants had received special favors or treatment in regard to rent delinquency, if those tenants had personal or political ties and connections with public officials or AHA staff or directors, and if there was a pattern of favoritism between certain housing project management personnel and certain tenants.

AHA agreed to make the records available for inspection but only after they had been edited to delete all tenants' names and addresses.

Sears then filed his petition for the writ of mandamus. AHA answered, contending that such records were not subject to inspection pursuant to the Open Records Laws and that to permit such inspection would violate the privacy of AHA tenants and subject AHA to liability to its tenants for such disclosure.

Jane Doe, Mary Roe and Ann Poe, fictional names of three tenants of AHA, individually and on behalf of a class of other tenants who were or who had been delinquent in rent payments, were allowed to intervene.

After submission of briefs and stipulations of facts, the trial court held that the records were public records subject to the Open Records Laws. The court also held, applying a balancing test, that tenants whose rents were upaid for six months or more and who had not paid all or substantially all of those delinquent rents prior to the filing of Sears' petition had waived their rights of privacy. The AHA was ordered to reveal to Sears their names, addresses and the periods and amounts of their delinquencies. The AHA was ordered to reveal to Sears the delinquent rents, periods of delinquency and housing

project locations of all delinquent tenants but not their names and addresses. The cut-off period of six months apparently was predicated upon a finding of fact that "the normal AHA practice was to commence eviction proceedings against a tenant if no payment of delinquent rent was made by a tenant after five months."

In case number 35604, defendant-intervenors appeal. In case number 35647, Sears cross appeals. This court affirms in part and reverses in part in the appeal and the cross appeal.

1. There can be no doubt but that the Housing Authority falls within the ambit of the Open Records Laws. Code Ann. § 40-2701 et seq. The AHA is a public body corporate and politic created as a result of statute. Code Ann. §§ 99-1102, 99-1103, 99-1116. It is governed by a board of commissioners appointed by the mayor. Code Ann. § 99-1110. The authority exercises public and essential governmental functions, and its property is, by law, public property. The low-cost housing which the AHA provides constitutes a public use and purpose for which public monies are spent. The entire character of the AHA is public.

Doe et al. argue that amendments to Code Ann. § 40-2703 show legislative intent that the Open Records Laws shall not apply to any authority other than a hospital authority. To the contrary, these amendments quite obviously were enacted at least in part to remove all doubt that could exist as to whether all records of hospital authorities are included within the classes of records which are not open to public inspection. The underlying implication of Code Ann. § 40-2703 as amended is that all records of all state, county and municipal authorities are open to public inspection unless closed by a specific exception, and that the records of hospital authorities are not in any respect different from those of other authorities when the issue is one of whether the particular record is open to public inspection under the general provisions of the Open Records Laws or is closed to public inspection under a specific statutory exception. See *Griffin-Spalding County Hosp. Auth. v. Radio Station WKEU*, 240 Ga. 444 (241 SE2d 196) (1978).

The trial court correctly held that the records of the

AHA fall within the Open Records Laws.

2. Having determined that AHA records are open records, this court next faces issues as to whether the defendant-intervenors have federally or state-created or protected rights of privacy which would be infringed upon were Sears to be furnished their names, addresses, and the amounts of their rent arrearages.

In *Griffin-Spalding County Hosp. Auth. v. Radio Station WKEU,* supra, this court held that a hospital authority properly could delete confidential information from records that otherwise were public before making such records available for a citizen's inspection. To the same effect: *Brown v. Minter,* 243 Ga. 397 (254 SE2d 326) (1979).

The parties have filed extensive briefs calling upon this court to delimit with precision the full extent of the federal and state constitutional rights of privacy, if any, and state statutory and common law rights of privacy, if any, as to the tenants' rent accounts with AHA. The Open Records Laws exempt from disclosure, among other records, "medical records *and similar files,* the disclosure of which would be an invasion of personal privacy." (Emphasis supplied.) Code Ann. § 40-2703. Whatever may be the outside limits of the rights of personal privacy to which that section refers, this court cannot accept Sears' contention that "similar files" must relate in some respect to the history, diagnosis, treatment, prognosis or result of disease or other medical condition. Properly construed, the section forbids disclosure to the general public from AHA records or files of *any* information which would invade the constitutional, statutory or common law rights of the tenants to privacy. See *Brown v. Minter,* 243 Ga. 397, supra. These personal privacy rights can be adequately protected, however, by separating the information which must be disclosed from that which must not be disclosed and by keeping the latter information confidential. *Griffin-Spalding County Hosp. Auth. v. Radio Station WKEU,* 240 Ga. 444, supra.

The full extent of the tenants' rights of privacy regarding the status of their rental accounts is an issue not presented because this case must be decided by an application of the doctrine of waiver of right. As a general

rule, a person's right of privacy may be waived in whole or in part, expressly or by implication, by his own actions or words or by those of persons who are authorized by him or by law to act in his behalf. *Pavesich v. New England Life Ins. Co.,* 122 Ga. 190, 191 (8), 199 (50 SE 68) (1904).

Because the law continues to protect a person's right of privacy to whatever extent it has not been waived, "the waiver carries with it the right to an invasion of privacy only to such an extent as may be legitimately necessary and proper in dealing with the matter which has brought about the waiver." 122 Ga. at 199. A partial waiver of the right of privacy may be implied from the act of accepting credit from another. *Gouldman-Taber Pontiac v. Zerbst,* 213 Ga. 682 (100 SE2d 881) (1957); *Haggard v. Shaw,* 100 Ga. App. 813, 818 (112 SE2d 286) (1959). Where a person "seeks and obtains credit from . . . [another person] she may expect the creditor to investigate her and her reputation, particularly for paying her bills, to ascertain for whom she works, and to communicate with her employer for information about her. She may expect her employer to want her to pay her bill, and may further expect her creditor to use reasonable means to persuade her to do so, and on failure to persuade to force her to do so through the courts. When she accepts the credit, she impliedly consents for her creditor to take all reasonable and necessary action to collect the bill." 213 Ga. at 684. Going into debt subjects the debtor "to the standard communications of a civilized society." *Davis v. General Fin. &c. Corp.,* 80 Ga. App. 708, 711 (57 SE2d 225) (1950). These decisions establish beyond all cavil the principle that a tenant in default under his lease impliedly consents to reasonable and necessary disclosures of his arrearage and his financial condition being made to persons who properly are concerned with whether or not the rental account is current, and who could assist the landlord to get the rental account current without recourse to the courts.

Employers have been held to be persons properly concerned with the status of their employees' debts. *Gouldman-Taber Pontiac v. Zerbst,* supra; *Haggard v. Shaw,* supra. This court holds today that the general public properly is concerned with whether or not public housing tenants are paying their rentals when due.

Accordingly, we hold that each of the tenants impliedly waived whatever constitutional, statutory or common law rights of privacy he may have had in the status of his rental account and the amounts and sources of his income when he allowed his rental account to become unpaid when due.

The fact that the AHA may have extended to all or to some tenants a period of grace during which accounts could be paid without the initiation of dispossessory proceedings is without relevance. The trial court should have required disclosure by the AHA of the names, addresses, sources and amounts of income and the periods and amounts of the rental delinquencies of all tenants whose rental accounts were in arrears on the date that Sears' petition was filed.

3. The tenants cannot complain that the trial court decided the issues on briefs rather than after an evidentiary hearing since they raised no objection to the manner in which the issues were presented to the court for decision until after entry of the court's order.

*Judgment affirmed in part and reversed in part in the appeal and the cross appeal. Undercofler, P. J., Jordan, Hill, Bowles and Marshall, JJ., and Judge Charles L. Weltner, concur. Clarke, J., not participating.*

ARGUED NOVEMBER 20, 1979 — DECIDED JANUARY 3, 1980 — REHEARINGS DENIED JANUARY 23, 1980.

*Phillip A. Bradley, Dennis Goldstein, Kenneth G. Levin,* for appellants (Case No. 35604).

*Hansell, Post, Brandon & Dorsey, David J. Bailey, Albert G. Norman, Jr., Parks, Jackson & Howell, Lenwood Jackson,* for appellees (Case No. 35604).

*David J. Bailey, Albert G. Norman, Jr.,* for appellant (Case No. 35647).

*Phillip A. Bradley, Dennis Goldstein, Lenwood Jackson, Kenneth G. Levin,* for appellees (Case No. 35647).