## 44381. NAPPER v. GEORGIA TELEVISION COMPANY et al.
(356 SE2d 640)

MARSHALL, Chief Justice.

This suit was instituted by the appellees-plaintiffs against the ap-

pellant-defendant under the Public Records Act. OCGA § 50-18-70 et seq. The appellees in this case consist of Georgia Television Company, d/b/a WSB-TV; The Atlanta Journal; The Atlanta Constitution; and ABC News, Inc. The appellant is George Napper, in his official capacity as Commissioner of Public Safety of the City of Atlanta. In that capacity, he has custody of the investigatory case files compiled by the Task Force formed to investigate what has become known world-wide as "The Atlanta Child Murders." The appellant has refused the appellees' request that they be given access to these files. As a result, the appellees have filed this suit in which they seek to enjoin the appellant from refusing to make these files open to public inspection. The trial judge conducted an in-camera inspection of the files, and then issued orders compelling the disclosure of some of the files in their entirety and the disclosure of other files with limited deletions. The orders were consolidated for appeal, and supersedeas was granted by us pending an expedited appellate review.

## Statement of Facts

The homicides constituting the Atlanta child murders took place between July of 1979 and May of 1981. During this time period, a series of 30 murders of black youths occurred in metropolitan Atlanta. Because of the extraordinary public concern and fear resulting from these murders, the Atlanta Metropolitan Task Force on Missing and Murdered Children (referred to hereinafter as the Task Force) was formed to investigate these murders.

In May of 1981, Wayne Williams was arrested and indicted for the murders of two of the missing and murdered children, Nathaniel Cater and Jimmy Ray Payne. During the Williams trial, the prosecution introduced evidence from ten additional cases of other missing and murdered children in an attempt to demonstrate a "pattern" among these ten murders and the Cater and Payne murders. (These ten additional cases will be referred to hereinafter as the "pattern" cases.) Evidence from the investigative files of the remaining murders played no role in the Williams trial. (The remaining cases will be referred to hereinafter as the "other" cases.) After a nine-week trial, which was concluded on February 27, 1982, Williams was convicted of the Cater and Payne murders. (The Cater and Payne cases will be referred to hereinafter as the "conviction" cases.) Wayne Williams' conviction was affirmed by this court on direct appeal in *Williams v. State*, 251 Ga. 749 (312 SE2d 40) (1983).

Shortly after the conviction of Wayne Williams for the Cater and Payne murders, the Commissioner of Public Safety of the City of Atlanta, who at the time was Mr. Lee Brown, announced at a press conference that 22 "pattern" and "other" cases had been "cleared" as a

result of Wayne Williams' conviction for the Cater and Payne murders. Use of the term "cleared" in this context means that the investigations were concluded and that no further investigations would be undertaken. The documents clearing these cases indicate that the Task Force had gathered sufficient evidence to identify the murderer in each case as Wayne Williams. Task Force Commander Willie J. Taylor testified that these cases were "exceptionally cleared" under Task Force regulations, because the District Attorney for Fulton County decided not to prosecute Williams for these crimes in light of his conviction of the Cater and Payne murders.

After the Task Force was disbanded, the investigative files concerning the missing and murdered children were transported to the Atlanta Bureau of Police Services, placed in the appellant's custody, and sealed in a locked vault. These closed investigative files have remained in the sealed vault for the last five years.

On January 8, 1987, the appellees instituted this suit in the Fulton Superior Court. In this suit, the appellees seek access to the investigative files concerning the two "conviction" cases and 21[1] "pattern" and "other" cases. The appellant voluntarily produced to the appellees the investigative file in one of the "pattern" cases, that of Charles Stephens. The appellant refused to produce the remainder of the investigative files from the "conviction" and "pattern" cases, on the ground that these files were related to open investigations during the pendency of a habeas-corpus petition filed by Wayne Williams in the Butts Superior Court. The appellant refused to produce the files in the "other" cases until the trial court conducted an in-camera inspection of these files for the purpose of deleting information, the public disclosure of which would constitute an invasion of privacy.

Mr. Joseph Drolet, of the Fulton County District Attorney's Office, gave deposition testimony in this case that "[t]here exists at this point an open prosecution file in regard to the prosecution of Wayne Williams, a file which has remained open since the prosecution began and which contains all pertinent material, including pattern cases and potential pattern cases and the cases, of course, of Mr. Payne and Mr. Cater, and that is still maintained as an open prosecution file at this

---

[1] Although 22 "pattern" and "other" cases were cleared and closed with the conviction of Wayne Williams for the Cater and Payne murders, the appellee sought access to only 21 investigative files, because the file on one of the missing and murdered children, Clifford Jones, had already been produced in the case of *Jersawitz v. Napper*, Docket #D-40014. In that case, which was litigated in the Fulton Superior Court, the appellees and Jack Jersawitz, a free-lance journalist who is not a party in this case, sought access to the investigative file concerning Jones. After an in-camera review of the file, the superior court ordered that it be made available for public inspection. No appeal was taken from that order. The appellees state that a review of that file disclosed that the case was classified as "cleared" after Wayne Williams was named as the murderer, but that his name had not been mentioned in the file until the last page.

time." Mr. Drolet further testified that if a retrial is ordered in Wayne Williams' habeas-corpus proceedings, it would be necessary to review the evidence in the "conviction" cases, "pattern" cases, and "other" cases. In addition, he testified that he would attempt to update and continue in the investigation and supplement any investigation.

The superior court directed the appellant to submit the investigative files in 11 of the "other" cases for an in-camera inspection by the court.[2] Prior to submitting the files to the trial court for an in-camera inspection, the appellant reviewed the files and identified those portions of the files which in the appellant's view should not be disclosed by marking the page with numbered tabs and highlighting the information. In addition, a summary of proposed deletions is included in the files.

After a hearing, the superior court ordered the appellant to submit the files in the "conviction" and "pattern" cases to the court for an in-camera inspection, on grounds that "the pendency of Wayne Williams' habeas corpus petition does not justify a blanket nondisclosure of these files [and] . . . [e]ven if these cases could be viewed as pending . . . the public interest in favor of disclosure outweighs the public interest in justifying a blanket nondisclosure." As to the files in the "other" cases, the superior court — after conducting a page-by-page in-camera inspection, and after "balancing the interests involved and considering all matters required by *Harris v. Cox*, 256 Ga. 299 (1986)," — ordered the appellant to disclose eight of these files in their entirety and four of these files with limited deletions.

In this appeal, the appellant has filed three enumerations of error, to wit: (1) The superior court erred in concluding that the pendency of Wayne Williams' state habeas-corpus petition does not warrant exemption of files related to the two cases on which Williams was convicted and the ten cases used during his trial to establish a pattern. (2) The superior court erred in ordering disclosure of certain categories of information which are exempt from disclosure under Georgia statutes. (3) The superior court erred in ordering disclosure of information which infringes upon the privacy rights of individuals

---

[2] Specifically, the trial court ordered the files concerning Michael McIntosh, Aaron Jackson, Jr., Aaron Wyche, Eddie Duncan, Jr., and Timothy Hill, disclosed in their entirety. The court ordered the Patrick Rogers file disclosed in its entirety, and it was noted that medical and dental records, as well as juvenile records, were among the materials ordered disclosed. The court ruled that these materials concerned the victim, Patrick Rogers, and the court found that the privacy interests of the deceased are outweighed by the interests of the public favoring disclosure. The court ordered the Anthony B. Carter, Christopher Richardson, Curtis Walker, and Yusef Bell files disclosed with limited deletions. There is also a disclosure order concerning the file on William Barrett. However, his case was introduced in evidence at Williams' trial as one of the "pattern" cases. See *Williams v. State*, supra, 251 Ga. at p. 771. The court ordered this file disclosed in its entirety.

whose names, addresses, and other personal information appear in the files requested by the appellees.

### The Act

(a) Where there is a request for disclosure of documents under the Public Records Act, the first inquiry is whether the records are "public records." "[D]ocuments, papers, and records prepared and maintained in the course of the operation of a public office are 'public records' within the meaning of this statute . . ." *Houston v. Rutledge*, 237 Ga. 764, 765 (229 SE2d 624) (1976).

(b) If the documents are found to be "public records," the second inquiry is: (A) whether they are within the exceptions to disclosure set forth in OCGA § 50-18-72 (a) (i.e., whether they are specifically required by the federal government to be kept confidential or whether they are medical or veterinary records or similar files, the disclosure of which would be an invasion of privacy); or (B) whether under OCGA § 50-18-70 (a) they are otherwise protected from disclosure by court order or by statute.

(c) In *Doe v. Sears*, 245 Ga. 83 (263 SE2d 119) (1980), we were called upon to determine the meaning of § 50-18-72 (a)'s exemption with respect to "medical or veterinary records or similar files, the disclosure of which would be an invasion of privacy." There, we held, "[w]hatever may be the outside limits of the rights of personal privacy to which that section refers, this court cannot accept [the] contention that 'similar files' must relate in some respect to the history, diagnosis, treatment, prognosis or result of disease or other medical condition. Properly construed, the section forbids disclosure to the general public from [public] records or files of *any* information which would invade the constitutional, statutory or common law rights of . . . privacy. See *Brown v. Minter*, 243 Ga. 397 [254 SE2d 326 (1979)]." 245 Ga. at p. 86.

"The right of privacy, protectable in tort, however, extends only to unnecessary public scrutiny. *Waters v. Fleetwood*, 212 Ga. 161 (91 SE2d 344) (1956); *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190 (50 SE 68) (1904); *Cabaniss v. Hipsley*, 114 Ga. App. 367 (151 SE2d 496) (1966)." (Fn. omitted.) *Athens Observer, Inc. v. Anderson*, 245 Ga. 63, 65 (263 SE2d 128) (1980). The tort of invasion of privacy protects " ' "(t)he right of a person . . . to be free from unwarranted publicity, . . . or the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs *with which the public has no legitimate concern.*" ' *Gouldman-Taber Pontiac, Inc. v. Zerbst*, 213 Ga. 682, 683 (100 SE2d 881) (1957). (Emphasis supplied.)" *Athens Observer v. Anderson*, supra, 245 Ga. at p. 65, n. 3. "There are at least three necessary elements for recovery under this

theory: (a) the disclosure of private facts must be a public disclosure; (b) the facts disclosed to the public must be private, secluded or secret facts and not public ones; (c) the matter made public must be offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances." *Cabaniss v. Hipsley*, supra, 114 Ga. App. at p. 372. This tort also encompasses publicity which places the plaintiff in a false light in the public's eye. Id. at p. 370. However, " '(w)here an incident is a matter of public interest, or the subject matter of a public investigation, a publication in connection therewith can be a violation of no one's legal right of privacy.' *Waters v. Fleetwood*, supra, p. 167." *Athens Observer v. Anderson*, supra, 245 Ga. at p. 66, n. 4.

"Various factors weigh on the question of whether personal privacy protects information from disclosure. Among other things, the court should consider whether the information is unsubstantiated and based on hearsay, whether it does not relate or relates only incidentally to the subject matter of the public record and the remoteness in time of the events referred to.

"While this state has a strong policy of open government, there is a corresponding policy for protecting the right of the individual to personal privacy. References to matters about which the public has, in fact and in law, no legitimate concern, though found in a public document are not subject to disclosure under the Public Records Act because they are not the subject of 'legitimate public inquiry.' " *Harris v. Cox Enterprises, Inc.*, 256 Ga. 299, 302 (348 SE2d 448) (1986).

(d) If the records are public records and do not fall within any of the exemptions set out in the Public Records Act, the question is whether the records should be protected from disclosure by court order under § 50-18-70 (a).

In regard to whether public records should be protected by court order, we have held, "[w]hen a controversy of this nature arises between a citizen and a public official, the judiciary has the rather important duty of determining whether inspection or non-inspection of the public records is in the public interest. In short, the judiciary must balance the interest of the public in favor of inspection against the interest of the public in favor of non-inspection in deciding this issue." *Houston v. Rutledge*, supra, 237 Ga. at p. 765.

(e) If there has been a request for identifiable public records within the possession of the custodian thereof, the burden is cast on that party to explain why the records should not be furnished. *Northside Realty Assoc. v. Community Relations Comm. of Atlanta*, 240 Ga. 432 (241 SE2d 189) (1978).

*Appeal*

1. Does pendency of Wayne Williams' petition for writ of habeas corpus warrant exemption of the files in the "conviction" cases and in the "pattern" cases?

(a) In *Houston v. Rutledge,* supra, this court held that files maintained by a sheriff, as a matter of administrative discretion and relating to the deaths of inmates in jail, were "public records." There, the court stated:

"Statements, memoranda, narrative reports, etc. made and maintained in the course of a pending investigation should not in most instances, in the public interest, be available for inspection by the public. However, once an investigation is concluded and the file closed, either with or without prosecution by the state, such public records in most instances should be available for public inspection. When a controversy of this nature arises between a citizen and a public official, the judiciary has the rather important duty of determining whether inspection or non-inspection of the public records is in the public interest. In short, the judiciary must balance the interest of the public in favor of inspection against the interest of the public in favor of non-inspection in deciding this issue.

"Generally, the public records that are prepared and maintained in a current and continuing investigation of possible criminal activity should not be open for public inspection. On the other hand, and again generally, public records prepared and maintained in a concluded investigation of alleged or actual criminal activity should be available for public inspection." 237 Ga. at pp. 765, 766.

In *Harris v. Cox,* supra, we held that a Georgia Bureau of Investigation report on its investigation of the Georgia State Patrol should be disclosed under the Public Records Act, since the investigation had been completed. We held that the report should be made available for public inspection notwithstanding the argument that a criminal matter was pending in that the report had been delivered to federal authorities for consideration. *Harris v. Cox,* supra, 256 Ga. at p. 300, n. 1. However, as previously stated, we also recognized that portions of the report, which would violate an individual's right to privacy or which are required by the federal government to be kept confidential, should not be made public.

In addition to cases decided under the Public Records Act, the appellant also cites *Cannington v. State,* 154 Ga. App. 557 (269 SE2d 62) (1980), and *National Labor Relations Bd. v. Robbins Tire &c. Co.,* 437 U. S. 214 (98 SC 2311, 57 LE2d 159) (1978).

In *Cannington,* the Court of Appeals held that the state may retain items used as evidence in a criminal trial for a reasonable length of time following the trial. In that case, the plaintiff had filed a mo-

tion for the return of property which had been seized by the state for use as evidence during his criminal trial. The trial court denied the motion, and on appeal the Court of Appeals affirmed, holding, "[i]tems having evidentiary value may be retained by the state for a reasonable length of time following the trial. We note various avenues of appeal used by criminal defendants following conviction, i.e. state and federal habeas corpus, extraordinary motions for new trial, etc." 154 Ga. App. at pp. 557-558.

In the *Robbins* case, supra, the Supreme Court was called upon to interpret the meaning of Exemption 7 (A) of the Freedom of Information Act (FOIA). 5 USC § 552 (b) (7) (A).

As originally enacted in 1966, Exemption 7 (A) permitted nondisclosure of "investigatory files compiled for law enforcement purposes except to the extent available by law to a private party." "In originally enacting Exemption 7, Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their cases. Foremost among the purposes of this Exemption was to prevent 'harm (to) the Government's case in court,' . . . by not allowing litigants 'earlier or greater access' to agency investigatory files than they would otherwise have . . ." 437 U. S. at p. 224.

However, the Court of Appeals for the District of Columbia Circuit rendered a series of decisions holding that investigatory files compiled for law enforcement purposes were entirely exempt from disclosure even after the termination of the investigation and enforcement proceedings. See *Center For Nat. Policy Review On Race & Urban Issues v. Weinberger*, 502 F2d 370 (D. C. C. A. 1974).

As a result, Exemption 7 was amended in 1974 to provide that the withholding of investigatory records would be based upon one or more of six specified types of harm enumerated in parts (A) through (E) of Exemption 7.[3] As amended, Exemption 7 (A) permits non-disclosure of "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would interfere with enforcement proceedings." This amendment was intended to do two things. "First, by substituting the word 'records'

---

[3] Exemption 7 provides, in full, that the disclosure provisions of the FOIA do not apply to "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel . . ."

for 'files,' it would make clear that courts had to consider the nature of the particular document as to which exemption was claimed, in order to avoid the possibility of impermissible 'commingling' by an agency's placing in an investigatory file material that did not legitimately have to be kept confidential . . . Second, it would explicitly enumerate the purposes and objectives of the Exemption, and thus require reviewing courts to 'loo(k) to the reasons' for allowing withholding of investigatory files before making their decisions . . ." 437 U. S. at pp. 229, 230. "Thus, where an agency fails to 'demonstrat(e) that the . . . documents (sought) relate to any ongoing investigation or . . . would jeopardize any future law enforcement proceedings,' Exemption 7 (A) would not provide protection to the agency's decision." Id. at p. 235.

After reviewing the history of Exemption 7 (A), the Court in *Robbins* held that under this Exemption the National Labor Relations Board is not required to disclose, prior to its hearing on an unfair labor practice complaint, statements of witnesses whom the Board intends to call as witnesses; that pre-hearing disclosure of witnesses' statements necessarily "would interfere" in the statutory sense with the Board's "enforcement proceedings," and, therefore, the Board is not required to make an individualized showing of harm in a particular case. However, such "generic determinations of likely interference," 437 U. S. at p. 236, were limited to "an imminent adjudicatory proceeding" which is "necessarily of a finite duration." Id. at p. 229, n. 10. See Powell, J., concurring in part and dissenting in part.

(b) The appellant argues that this case presents an exception to the rule that generally closed investigatory files should be disclosed. The appellant bases this argument on the pendency of Wayne Williams' habeas-corpus petition and the "real possibility" of the need for a retrial. The appellant contends, "In the event that Williams succeeds on his habeas petition, particularly if there is a determination that some evidence was improperly admitted at his trial, preparation for a retrial of Williams will involve reassessment of evidence, including evidence contained in the investigatory files, but not used at trial. Disclosure of the investigatory files would compromise these efforts. Clearly, therefore, the public interest in non-disclosure outweighs any purported public interest in disclosure."

Before the trial court, the appellant argued that opening the case files to public inspection would compromise the state's case in the event of a retrial, because of the effects of pretrial publicity, because of allegations as to other suspects, and because Williams would be given information that he is not entitled to under *Brady v. Maryland.*

The appellees argue that if closed investigatory files in criminal cases are held not to be open to public inspection because of the possibility of post-conviction relief, the Public Records Act in this area of

criminal investigations will be completely eviscerated. The appellees also argue that the public has a very strong interest in the disclosure of files on cases which were not prosecuted, and "[t]his public concern has been evidenced by the continued interest in the questions left unanswered by the closing of the Task Force investigations five years ago. Were the investigations conducted properly? Why did the investigations of so many murders result in the prosecution of only one suspect? What evidence supports the Task Force's conclusions that Wayne Williams committed all of the 'cleared' murders? The answers to these questions lie, if anywhere, in these closed investigative files."

(c) In our opinion, the trial court did not err in ruling that the pendency of Wayne Williams' habeas-corpus petition does not justify a blanket non-disclosure of the files in the "pattern" and "conviction" cases.

The evidence certainly authorized the trial court in finding that the investigations in those cases have concluded. We cannot agree that the public interest in favor of disclosure is outweighed by the public interest in favor of non-disclosure based upon the possibility that a retrial might be ordered in post-conviction proceedings. As indicated in *Cannington v. State*, supra, post-conviction collateral-attack proceedings are of an indeterminate duration. To hold that the pendency of such proceedings requires a blanket non-disclosure of the investigatory case files would, as argued by the appellees, eviscerate the Public Records Act in this area.

We hold that once the trial has been held, the conviction affirmed on direct appeal, and any petition or petitions for certiorari denied (including to the Supreme Court of the United States), the investigatory file in the case should be made available for public inspection. If there are any specific items in the file which are exempt from the disclosure provisions of the Act, or which in the public interest should not be disclosed, the burden is on the party opposing disclosure to make this showing. Likewise, if there is information, the disclosure of which would jeopardize a future law enforcement proceeding, see *Robbins*, supra, the burden is on the party opposing disclosure to make that showing. In our opinion, these burdens have not been met here.

2. Did the trial court erroneously order the disclosure of information which is exempt from disclosure by various statutes?

(a) First, the appellant argues that the trial court erroneously ordered the disclosure of motor-vehicle-registration information contained in several of the files.

Subsection (d) of § 10 of the "Motor Vehicle Certificate of Title Act" (OCGA § 40-3-24 (d)) provides that motor vehicle records which the State Revenue Commissioner is required to maintain are "[e]xempt from the provisions of any law of this state requiring that

such records be opened for public inspection; provided, however, that the records of any particular motor vehicle may be available for inspection by [among others] the following: (1) Any law enforcement officer . . ."

It appears that during the investigation of "The Atlanta Child Murders," law-enforcement officers utilized OCGA § 40-3-24 (d) (1) to inspect motor-vehicle records of various automobiles, and some of this information was incorporated into various of the case files.

We hold that although these records are not open for public inspection under the Public Records Act, this does not preclude public disclosure where a law-enforcement officer who has inspected the records incorporates information therefrom into an investigatory case file.

(b) The appellant argues that various of the files contain information regarding allegations of child abuse, molestation, or neglect, and that such records are confidential pursuant to OCGA § 49-5-40.

OCGA § 49-5-40 provides, "Each and every record concerning reports of child abuse and neglect which is in the custody of the [Department of Human Resources] or other state or local agency is declared to be confidential, and access thereto is prohibited except as provided in Code Section 49-5-41." However, under OCGA § 49-5-41 (a) (2), where a court considers it necessary for the resolution of an issue before it, the court may order the disclosure of the information. *Ray v. Dept. of Human Resources*, 155 Ga. App. 81 (1) (270 SE2d 303) (1980).

(c) The appellant argues that some of the requested documents contain information gained through wiretaps, and that OCGA § 16-11-64 (b) (8) prohibits the public disclosure of such information.

OCGA § 16-11-64 (b) (8) provides that "[a]ny publication of the information or evidence obtained under a warrant [authorizing the use of a device for the interception of wire or oral transmissions, i.e., a wiretap] other than that necessary and essential to the preparation of and actual prosecution for the crime specified in the warrant shall be an unlawful invasion of privacy under this part and shall cause such evidence and information to be inadmissible in any criminal prosecution."

We, therefore, agree with the appellant that the trial court should have deleted from the subject documents information obtained under a warrant authorizing a wiretap.

(d) The appellant argues that most of the case files include the criminal histories of various individuals, i.e., the names and addresses of persons who have been arrested on prior occasions, information regarding the offenses involved, the disposition of the cases, and in some instances photographs of the arrestees. The appellant contends that under the statutory provisions under which the Georgia Crime

Information Center (GCIC) was established, OCGA § 35-3-30 et seq., this information is not subject to public disclosure.

OCGA § 35-3-30 (4) (A) defines "criminal history record information."[4] OCGA § 35-3-34 (a) (1) authorizes the GCIC to make records of adjudications of guilt available to private persons and businesses under certain circumstances. OCGA § 35-3-33 (10) authorizes the GCIC to make available, upon request, to all local and state criminal justice agencies, all federal criminal justice agencies, and criminal justice agencies in other states any information in the files of the center which will aid these agencies in the performance of their official duties. OCGA § 35-3-37 (a) provides, "Nothing in this article shall be construed so as to authorize any person, agency, corporation, or other legal entity to invade the privacy of any citizen as defined by the General Assembly or the courts other than to the extent provided in this article."

We hold that where "criminal history record information" has been incorporated by a law-enforcement agency into an investigatory case file, it should be open for public inspection unless its disclosure would constitute an invasion of privacy. See Division 3, infra.

(e) Medical records are exempt from the provisions of the Public Records Act only to the extent that disclosure would be an invasion of personal privacy. OCGA § 50-18-72 (a).

In the files concerning several of the victims, the court, in refusing to delete the medical records, concluded that "the privacy interests of the deceased are outweighed by the interests of the public favoring disclosure." The appellant argues that the trial court committed error here, in that the balancing-of-interests test is utilized only where the subject information is not otherwise exempt from disclosure. We disagree. In determining whether the invasion of privacy is warranted or unwarranted, the question can be stated in terms of whether the privacy interests of the deceased are outweighed by the interests of the public favoring disclosure. *Fund for Constitutional Govt. v. Nat. Archives &c. Service*, 656 F2d 856, 862 (D.C.C.A. 1981).

We cannot say that the trial court abused its discretion in refusing to order the deletion of the medical records of the victim, or other medical and mental-health information.

(f) The appellant argues that the information in some of the files was obtained through hypnosis of witnesses and is, therefore, privi-

---

[4] Under OCGA § 35-3-30 (4)(A), " '[c]riminal history record information' means information collected by criminal justice agencies on individuals consisting of identifiable descriptions and notations of arrests, detentions, indictments, accusations, information, or other formal charges, and any disposition arising therefrom, sentencing, correctional supervision, and release. The term does not include identification information, such as fingerprint records, to the extent that such information does not indicate involvement of the individual in the criminal justice system."

leged under OCGA § 43-39-16.

However, the privilege established by OCGA § 43-39-16 pertains only to "confidential relations and communications between a licensed applied psychologist and client." And, § 43-39-16 does not exempt communications made by a witness for the prosecution during hypnosis conducted for prosecution purposes. *Emmett v. Ricketts*, 397 FSupp. 1025 (N.D. Ga. 1975).

(g) The appellant argues that some of the files contain information compiled by the Federal Bureau of Investigation in the course of its investigation of "The Atlanta Child Murders," and that this information is exempt from disclosure under Exemption 7 (C) of the FOIA. 5 USC § 552 (b) (7) (C).

Exemption 7 (C) protects "[i]nvestigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . constitute an unwarranted invasion of personal privacy." Our treatment of this Exemption will be discussed in Division 3, infra.

(h) The appellant argues that records related to arrests and criminal histories of juveniles are not subject to the Public Records Act, in that under OCGA § 15-11-59 (b), these records are not open for public inspection unless "a charge of delinquency is transferred for criminal prosecution under Code Section 15-11-39, or the interest of national security requires, or the court otherwise orders in the interest of the child . . . ."

However, as argued by the appellees, all references to juvenile records were deleted.

(i) The appellant argues that one file, that of Christopher Richardson, contains public-school attendance records, which under OCGA § 20-2-697 "shall be open to inspection by the visiting teacher, attendance officer, or duly authorized representative" and "shall not be used for any purpose except providing necessary attendance information required by the State Board of Education, except with the permission of the parent or guardian of a child or pursuant to the subpoena of a court of competent jurisdiction."

In addition, a written summary of a public-school disciplinary proceeding, which includes a description of the incident and the disposition thereof but not the names of any party to the incident, is a public record under OCGA § 20-2-757 (c).

After reviewing the file concerning Christopher Richardson, we find no public-school attendance records or records of public-school disciplinary proceedings.

(j) The appellant argues that under OCGA § 43-36-15 (a) (3) (D), "A polygraph examiner shall not release the results of a subject's examination unless the examiner has obtained the prior written permission of the subject." However, the appellees point out that a poly-

graph examiner may disclose information acquired from a polygraph examination to any person pursuant to and directed by court order. OCGA § 43-36-15 (a) (4) (C).

3. Did the trial court err in ordering disclosure of information which infringes upon the privacy rights of various individuals?

In *Fund for Constitutional Govt. v. Nat. Archives &c. Service*, 485 FSupp. 1 (D.C.D.C. 1979), the plaintiff was requesting disclosure under the FOIA of voluminous documents generated by the Watergate Special Prosecution Force (WSPF) during the course of various of its investigations. In issue was Exemption 7 (C) of the FOIA, which, as previously stated, exempts from compulsory disclosure "[i]nvestigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . constitute an unwarranted invasion of personal privacy."[5]

Citing *Committee of Masonic Homes v. N.L.R.B.*, 414 FSupp. 426, 431 (E.D.Pa. 1976), the federal district court held that this exemption "would apply to matters which under normal circumstances 'would prove personally embarrassing to an individual of normal sensibilities . . . .' " 485 FSupp. at p. 6. Under this standard, the court held that information in the files identifying individuals who, though investigated, were not indicted or prosecuted for a crime, should be exempt from disclosure. In addition, the court held that information revealing the identity of a confidential informant should not be disclosed.[6] And, as we read the decision, the court also held that information in the files, which would prove personally embarrassing to individuals who were not the targets of the investigation, likewise should not be disclosed.

On appeal, the federal Court of Appeals held that the district court properly applied the claimed exemption to the information in question. *Fund for Constitutional Govt. v. Nat. Archives &c. Service*, 656 F2d 856, supra.

---

[5] FOIA Exemption 6 protects "personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." In contrast, Exemption 7 (C) protects "[i]nvestigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . constitute an unwarranted invasion of personal privacy." "The difference in wording between the two exemptions was advised and not accidental; its effect is to make Exemption 7 (C) a somewhat broader shield against disclosure than Exemption 6 . . . . The difference in breadth, in turn, is attributable to the inherent distinctions between investigatory files and personnel, medical and similar files: that an individual's name appears in files of the latter kind, without more, will probably not engender comment and speculation, while, as the Government argues here, an individual whose name surfaces in connection with an investigation may, without more, become the subject of rumor and innuendo." *Fund for Constitutional Govt. v. Nat. Archives &c. Service*, supra, 485 FSupp. at p. 5, citing *Congressional News Syndicate v. United States Dept. of Justice*, 438 FSupp. 538, 541 (D.D.C. 1977).

[6] Here, the trial court did delete such information from the files.

In this regard, the Court of Appeals observed that the prosecutor's decision to prosecute is based on variant factors and is rarely subject to judicial review. The Court of Appeals also noted that information that individuals had been the subject of a criminal investigation "would produce the unwarranted result of placing the named individuals in the position of having to defend their conduct in the public forum outside of the procedural protections normally afforded the accused in criminal proceedings." 656 F2d at p. 865. In sum, the Court of Appeals held that "the legitimate and substantial privacy interests of individuals under these circumstances cannot be overridden by a general public curiosity[,]" id. at p. 866; and, although there is no per se rule forbidding public disclosure of such information, "the privacy interests of the individuals in question . . . should yield only where exceptional interests militate in favor of disclosure." (Fn. omitted.) Id.

Consequently, we hold that the trial court should have deleted from the files information identifying individuals who were investigated but not charged with or prosecuted for a crime, as well as information which would prove personally embarrassing to individuals who were not the targets of the investigation, unless the trial court determines that "exceptional interests militate in favor of disclosure." Id.

Therefore, the judgment is affirmed in part and reversed in part, and the case is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED MAY 6, 1987 —
RECONSIDERATION DENIED JUNE 3, 1987 AND JUNE 18, 1987.

*Marva Jones Brooks, W. Roy Mays III, Deborah McIver Floyd,* for appellant.
*Dow, Lohnes & Albertson, R. Keegan Federal, Jr., King & Spalding, Joseph R. Bankoff, Dan H. Willoughby, Jr.,* for appellees.

ADDENDUM.

There are three issues presented for decision in this case.

The first issue is whether the pendency of Wayne Williams' state habeas-corpus petition demands a blanket non-disclosure of investigatory files in what are referred to by the parties as the "conviction" and "pattern" cases. In our opinion, as originally written, we agreed with the trial judge that blanket non-disclosure is not required under

these circumstances, and, on motion for reconsideration, we have not reversed or modified this holding.

The second multifaceted issue is whether certain categories of information contained in the files in what are referred to as the "other" cases are exempt from disclosure under various state and federal statutory laws. In this regard, we noted that under the Georgia Public Records Act, OCGA § 50-18-72 (a), there exists an exemption from public disclosure with respect to medical or veterinary records, or any other information which would invade constitutional, statutory or common-law rights of privacy. *Doe v. Sears*, 245 Ga. 83, 86 (263 SE2d 119) (1980). In Div. 2 (e), we held that in determining whether medical records are exempt from disclosure under the previously cited statutory provision, the trial court must balance the privacy interests of the individual against the interests of the public favoring disclosure. We further held that the trial court properly ruled that all of the categories of information in question were not exempt from disclosure, except with respect to information gained through wiretaps. See Div. 2 (c). On motion for reconsideration, we have not reversed or modified these holdings.

The issue presented in Div. 3 is whether the trial court erred in ordering disclosure of information in the files in the "other" cases, which information infringes upon the privacy rights of the individuals in question. Prior to the filing of the motion for reconsideration, the only cases cited by the parties which provided any real guidance on this question were prior decisions of this court. In these decisions, the only applicable holdings were contained in *Harris v. Cox Enterprises*, 256 Ga. 299 (348 SE2d 448) (1986) and *Athens Observer v. Anderson*, 245 Ga. 63 (263 SE2d 128) (1980) and cases cited therein. *Harris v. Cox Enterprises*, supra, recognized that information in investigatory files in criminal cases which constitutes an invasion of personal privacy, within the meaning of the tort of invasion of privacy, should not be disclosed, and that "[v]arious factors weigh on the question of whether personal privacy protects information from disclosure. Among other things, the court should consider whether the information is unsubstantiated and based on hearsay, whether it does not relate or relates only incidentally to the subject matter of the public record and the remoteness in time of the events referred to." 256 Ga. at p. 302. However, *Athens Observer v. Anderson*, supra, citing *Waters v. Fleetwood*, 212 Ga. 161 (91 SE2d 344) (1956) observed that " '(w)here an incident is a matter of public interest, or the subject matter of a public investigation, a publication in connection therewith can be a violation of no one's legal right of privacy.' *Waters v. Fleetwood*, supra, p. 167." 245 Ga. at p. 66, n. 4. Under these holdings, we were unable to say that the trial court abused its discretion in refusing to delete the contested information.

However, on motion for reconsideration, the appellant cited a federal decision, *Fund for Constitutional Govt. v. Nat. Archives &c. Service*, 656 F2d 856 (D.C.C.A. 1981), which is directly on point. This decision recognizes that under Exemption 7 (C) of the federal FOIA, which we recognized in Div. 2 (g) of our opinion, investigatory records compiled for law-enforcement purposes are exempt from public disclosure if production of such records would constitute an unwarranted invasion of privacy. *Fund for Constitutional Govt.* holds that information in such files identifying individuals who, though investigated, were not charged with or prosecuted for a crime, as well as information personally embarrassing to individuals who were not targets of the investigation, should not be disclosed to the general public unless "exceptional interests militate in favor of disclosure." 656 F2d at p. 866.

Here, the asserted public interest in favor of disclosure of the files in the "other" cases consists of the public's being able to make an independent determination as to why these cases were closed without prosecution. It is difficult to see how this interest would be served through the public disclosure of information which would prove personally embarrassing to individuals who were not even targets of the investigation, i.e., information which would constitute an invasion of personal privacy (see *Cabaniss v. Hipsley*, 114 Ga. App. 367, 372 (151 SE2d 496) (1966)). And, it would seem that public disclosure in this case of the facts uncovered with respect to individuals who were targets of the investigation but who were not charged with or prosecuted for a crime, *with the deletion of information identifying such individuals*, would represent a careful balancing of the asserted public interest in favor of disclosure against the privacy interests of the individuals involved, for reasons stated in *Fund for Constitutional Govt.*, supra. Therefore, as previously stated, the case is remanded to the trial court with the direction that the court delete these categories of information, unless, as also previously stated, the trial court determines that "exceptional interests militate in favor of disclosure." *Fund for Constitutional Govt.*, supra, 656 F2d at p. 866.