A97A1850. FINCHER v. STATE OF GEORGIA et al.
(497 SE2d 632)

RUFFIN, Judge.

In August 1993, the State Board of Pardons & Paroles of Georgia ("State Board") released to a local television station, pursuant to Georgia's Public Records Act (OCGA § 50-18-70 et seq.), an investigatory report concerning claims that Chuck Fincher had sexually harassed a co-worker and engaged in other misconduct while in the

State Board's employment. Fincher sued the State Board and several of its employees, asserting that the release of the report violated his common law and constitutional rights to privacy. He sought damages from the State Board and the individual defendants under the Georgia Tort Claims Act, OCGA § 50-21-20 et seq., and 42 USC § 1983. Fincher further claimed the individual defendants violated his due process rights under the Georgia Constitution and that OCGA § 50-21-25 (a) was unconstitutional to the extent it barred the claim. The trial court dismissed this last claim, concluding that Fincher had no independent cause of action against the individual State Board employees. Subsequently, the State Board moved to dismiss the remainder of Fincher's claims. The trial court, treating the motion to dismiss as a motion for summary judgment, dismissed Fincher's complaint altogether. Fincher appealed, and for the following reasons, we affirm.

As the trial court noted, the motion to dismiss was transformed to a motion for summary judgment. See OCGA § 9-11-12; *White House v. Winkler*, 202 Ga. App. 603, 605-606 (415 SE2d 185) (1992). "On a defendant's motion for summary judgment, the evidence is construed in the respondent's favor; the respondent is given the benefit of all doubts and all reasonable inferences therefrom are indulged in [his] favor. The burden is on the movant to show that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law. [Cit.] Where the movant fails in that burden, the grant of summary judgment is error. [Cit.] But where the movant carries this burden, the respondent may not rest on [his] pleadings but must put forth evidence showing actual issues for trial. [Cit.]" *Moore v. Food Assoc.*, 210 Ga. App. 780, 781 (437 SE2d 832) (1993).

Viewed in this light, the evidence reveals that in July 1992, the State Board investigated Fincher, a State Board employee, regarding claims that he had sexually harassed a co-employee and had improperly used his firearm issued by the State Board. The investigatory report concluded that the facts supported the credibility of Fincher's accuser and that it was "plausible in this instance to believe that an act of misconduct may have taken place." There is no indication in the record whether Fincher was fired or quit as a result of the investigation, or at what time Fincher stopped working for the State Board. Nor is there evidence in the record that any criminal or civil action stemming from the misconduct was ever filed.

In June 1993, a television producer requested the investigatory report from the State Board. In August 1993, the State Board released the report to the television producer. Subsequently, Fincher filed the instant action. In dismissing Fincher's assertion that the individual defendants were liable for invading his privacy, the trial court did not address the constitutionality of OCGA § 50-21-25 (a). In

dismissing the remainder of Fincher's complaint, the trial court held that, after reviewing the evidence in the light most favorable to Fincher, the public's interest in disclosing the report outweighed Fincher's private interests and that neither Fincher's common law nor federal constitutional right to privacy was violated by the release.

1. Fincher first appealed to the Supreme Court of Georgia, arguing, inter alia, that OCGA § 50-21-25 (a) was unconstitutional. The Supreme Court, noting that the trial court did not specifically rule on the statute's constitutionality, transferred the appeal to this Court.

We will not address this claim as it is well settled that "[a]rguments regarding constitutional issues which were not raised or ruled on below will not be considered on appeal. [Cit.]" *Atlantic Steel Credit Union v. Shephard*, 204 Ga. App. 297, 299 (3) (419 SE2d 132) (1992).

2. The State Board contends that it properly released the report in accordance with OCGA § 50-18-70 (b), which provides that "[a]ll public records of an agency[,] . . . except those which by order of a court of this state or by law are prohibited or specifically exempted from being open to inspection by the general public, shall be open for a personal inspection by any citizen of this state at a reasonable time and place; and those in charge of such records shall not refuse this privilege to any citizen."

"Where there is a request for disclosure of documents under the Public Records Act, the first inquiry is whether the records are 'public records.' '(D)ocuments, papers, and records prepared and maintained in the course of the operation of a public office are "public records" within the meaning of [OCGA § 50-18-70].' [Cit.]" *Napper v. Ga. Television Co.*, 257 Ga. 156, 160 (a) (356 SE2d 640) (1987). The investigatory report was clearly "prepared and maintained in the course of the operation" of the State Board. Accordingly, the report was a public record. Id.

Fincher argues that the investigatory report was part of his personnel file, the dissemination of which constituted an unwarranted invasion of his personal privacy. We disagree that the investigatory report was necessarily part of Fincher's personnel file. In *Irvin v. Macon Tel. Publishing Co.*, 253 Ga. 43, 45 (3) (316 SE2d 449) (1984), the Supreme Court of Georgia concluded that placement of the records of GBI investigations of several employees of the State Farmer's Market in Macon, Georgia, into the personnel files of the investigated employees did not automatically transform the investigation records into personnel records. Id. at 45. Furthermore, there is no blanket exclusion exempting from disclosure a person's personnel records. *Hackworth v. Bd. of Ed. &c. of Atlanta*, 214 Ga. App. 17, 22 (2) (447 SE2d 78) (1994).

As the investigative report was a public record, the next inquiry is "(A) whether [the report was] within the exceptions to disclosure set forth in OCGA § 50-18-72 (a)[,] . . . or (B) whether under OCGA § 50-18-70 (a) [it was] otherwise protected from disclosure by court order or by statute." *Napper*, supra at 160 (b). In the instant case, there is no evidence that the information released by the State Board was protected by a court order. Id.; OCGA § 50-18-70 (a).

Furthermore, the investigatory report was not exempt from disclosure under OCGA § 50-18-72 (a) (5). This subsection prohibits from public disclosure "records consisting of material obtained in investigations related to the suspension, firing, or investigation of complaints against public officers or employees until ten days after the same has been presented to the agency or an officer for action or the investigation is otherwise concluded or terminated. . . ."

The investigatory report in this case was related to a complaint of misconduct against Fincher, who was a public officer and employee. Accordingly, the report could be released ten days after it had been presented to the State Board or an officer for the Board, or if the investigation had concluded or terminated. Fincher does not allege, nor is there any evidence in the record, showing that the State Board released the investigatory report prior to the time the investigation was concluded or terminated or before ten days had passed after submission to the State Board.

Another exemption under OCGA § 50-18-72 sets forth that "[p]ublic disclosure shall not be required for records that are . . . [m]edical or veterinary records and similar files, the disclosure of which would be an invasion of personal privacy." OCGA § 50-18-72 (a) (2). The Supreme Court of Georgia has rejected the contention that the term " 'similar files' must relate in some respect to the history, diagnosis, treatment, prognosis or result of disease or other medical condition." *Doe v. Sears*, 245 Ga. 83, 86 (2) (263 SE2d 119) (1980). Rather, the court concluded that " '[p]roperly construed, [OCGA § 50-18-72 (a) (2)] forbids disclosure to the general public from (public) records or files of *any* information which would invade the constitutional, statutory or common law rights of . . . privacy. [Cit.]' [Cit.]" (Emphasis in original.) *Napper*, supra at 160 (c).

"The invasion of personal privacy encompassed as an exception to the right of the public to access is to be determined by an examination of the tort of invasion of privacy. [Cit.]" *Harris v. Cox Enterprises*, 256 Ga. 299, 301 (348 SE2d 448) (1986). "The tort of invasion of privacy protects the right of a person to be free from unwarranted publicity or the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern. [Cit.]" (Punctuation and emphasis omitted.) *Napper*, supra at 160 (c). "While this state has a strong policy of

open government, there is a corresponding policy for protecting the right of the individual to personal privacy. References to matters about which the public has, in fact and in law, no legitimate concern, though found in a public document are not subject to disclosure under the Public Records Act because they are not the subject of 'legitimate public inquiry.'" *Harris*, supra at 302. See *Napper*, supra at 161.

We agree with the trial court that the public interest in obtaining the information outweighed Fincher's privacy interest. The investigatory report contained information regarding Fincher's improper conduct while working for the State Board. "[T]he public has an interest in learning about the operation and functioning of a public agency . . . and the work-related conduct of public employees; in gaining information to evaluate the expenditure of public funds and the functioning of a public institution or agency; in having information openly available to them so that they can be confident in the operation of their government; and in [e]nsuring that both the activity of public employees suspected of wrongdoing and the conduct of those public employees who investigate the suspects is open to public scrutiny." (Punctuation omitted.) *Irvin*, supra at 45. As the investigation concerned a public employee's alleged improper activities in the workplace, the public had a legitimate interest in the conduct that outweighed Fincher's interest in non-disclosure. Id.

There are no other exceptions to disclosure in OCGA § 50-18-72 that are applicable, and Fincher has failed to come forward with any claim or evidence that disclosure was prohibited by Georgia statutory authority.

Accordingly, the State Board not only had the authority but was required under the Public Records Act to release the information, and thus the trial court properly dismissed Fincher's action for invasion of privacy under the Georgia Tort Claims Act.

3. We also find that dismissal of Fincher's 42 USC § 1983 claim was proper. 42 USC § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

"The Constitution protects individuals against invasion of their privacy by the government. [Cits.]" *Ramie v. City of Hedwig Village*, 765 F2d 490, 492 (5th Cir. 1985). "The right to privacy consists of two inter-related strands; one protects an individual's interest in avoiding disclosure of personal matters (the confidentiality strand) and the other protects an individual's interest in making certain personal

decisions free of government interference (the autonomy strand). [Cit.]" *Cantu v. Rocha*, 77 F3d 795, 806 (5th Cir. 1996). Clearly, in the instant case, we are dealing with the first strand.

"In the context of government disclosure of personal matters, an individual's right to privacy is violated if: (1) the person had a legitimate expectation of privacy; and (2) that privacy interest outweighs the public need for disclosure. *Fadjo v. Coon*, [633 F2d 1172 (5th Cir. 1981)]." *Cantu*, supra at 806. See also *James v. City of Douglas*, 941 F2d 1539, 1544 (11th Cir. 1991) ("state official may not disclose intimate personal information obtained under a pledge of confidentiality unless the government demonstrates a legitimate state interest in disclosure which is found to outweigh the threat to the individual's privacy interest").

Applying the first prong of this balancing test, it cannot be said that Fincher had a legitimate expectation of privacy as to the investigatory report, a public record, that addressed his sexual harassment of a co-worker and other misconduct while in the course of his employment for the State. " '[T]here is no liability for giving publicity to facts about the plaintiff's life which are matters of public record.' . . . [A]scertaining and publishing the contents of public records are simply not within the reach of these kinds of privacy actions." *Cox Broadcasting Corp. v. Cohn*, 420 U. S. 469, 494 (95 SC 1029, 43 LE2d 328) (1975). See *Irvin*, supra (public's legitimate interest in ensuring that the activity of public employees suspected of wrongdoing is open to public scrutiny).

Even if Fincher had some legitimate expectation of privacy in the investigatory report, this interest would not outweigh the public's interest in disclosure. "Public records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by the reporting of the true contents of the records by the media." *Cohn*, supra at 495. See also *Irvin*, supra. "Great responsibility is accordingly placed upon the news media to report fully and accurately the proceedings of government, and official records and documents open to the public are the basic data of governmental operations." *Cohn*, supra at 491-492.

Consequently, Fincher could not establish that his purported expectation of privacy in the investigatory report outweighed the public's need for disclosure for purposes of ascertaining the administration and proceedings of the government. *Cox Broadcasting*, supra; *Cantu*, supra. Accordingly, Fincher was not deprived of any right or privilege secured by the U. S. Constitution or federal law, and therefore the trial court did not err in dismissing his claim under 42 USC § 1983.

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED MARCH 10, 1998.

Chuck Fincher, *pro se.*

Thurbert E. Baker, Attorney General, George P. Shingler, Deputy Attorney General, C. Latain Kell, Senior Assistant Attorney General, Lori V. Winkleman, Kimberly L. Schwartz, Assistant Attorneys General, for appellees.